DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Alfred Cleveland, appeals the judgment of the Lorain County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On February 2, 1996, Appellant, Alfred Cleveland, was convicted of the aggravated murder of Marsha Blakely. Cleveland was sentenced to a term of 20 years to life in prison. Cleveland timely appealed his conviction and sentence. This Court affirmed his conviction and sentence on March 5, 1997. See State v. Cleveland (Mar. 5, 1997), 9th Dist. No. 96CA006357. Cleveland filed a motion for leave to file a delayed appeal with the Ohio Supreme Court. The Supreme Court denied Cleveland's motion on July 2, 1997. On December 2, 1996, Cleveland filed a motion for a new trial, claiming that he had discovered new evidence that the prosecution had improperly withheld. The basis of this motion was that a key prosecution witness, William Avery, Jr., had lied during his trial testimony. This theory had been presented *Page 2 
to the jury during the trial. The trial court held a hearing on Cleveland's motion for a new trial. The "new evidence" was presented in the form of an affidavit of Jeremiah Abdullah, who had been with Blakely just before the murder. The trial court denied the motion. Cleveland timely appealed the trial court's judgment. This Court affirmed the trial court's denial of his motion for new trial. See State v.Cleveland (Apr. 8, 1998), 9th Dist. No. 97CA006840.
 {¶ 3} On July 14, 1997, Cleveland filed a delayed application for reopening, citing ineffective assistance of appellate counsel. On July 29, 1997, this Court issued a journal entry denying Cleveland's delayed application. Cleveland then filed an appeal, pro se, with the Ohio Supreme Court in which he asserted, among other arguments, that he was denied the effective assistance of appellate counsel. On November 12, 1997, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question.
 {¶ 4} On July 6, 2006, Cleveland filed a second motion for leave to move for a new trial along with a petition for post-conviction relief ("PCR") and a motion to declare R.C. 2953.23 unconstitutional. The State responded in opposition. On January 29, 2008, the trial court indicated that it would only hear evidence of William Avery's alleged recantation of his prior trial testimony. The trial court denied all of Cleveland's claims for relief alleged in his petition for PCR and his motion for leave to move for a new trial, except those relating to Avery's recantation. The trial court denied Cleveland's motion to hold R.C. 2953.23 unconstitutional.
 {¶ 5} The matter proceeded to a hearing on January 31, 2008. Avery arrived an hour late to the hearing. Cleveland called Avery to the witness stand. The trial court immediately informed Avery that it had reviewed his previous trial testimony, including his (1) testimony at *Page 3 
the trials of Cleveland's three co-defendants[1], (2) April 10, 2006 deposition and (3) February 9, 2006 affidavit, and that it was concerned that his testimony at the hearing might incriminate him. The trial court asked Avery whether he had conferred with a licensed attorney with regard to that issue. Avery indicated that he had not. Avery declined the appointment of counsel. Having been informed of the nature of the anticipated testimony, the trial court informed Avery that because his testimony would contradict his testimony in four previous trials, he could be charged with perjury. Avery indicated he was not aware of the potential for a perjury charge. Avery then accepted the court's second offer for appointed counsel and left the courtroom to meet with the appointed counsel.
 {¶ 6} The hearing reconvened later that morning. Avery returned to the witness stand. He indicated that he had been advised of his right against self-incrimination and he was prepared to proceed with his testimony. The State then requested that the trial court review Avery's Miranda rights. The Court acknowledged that this was not necessarily a Miranda situation, but nonetheless advised Avery of his Miranda rights. Avery indicated that he understood his rights and wished to speak with his attorney once again.
 {¶ 7} The hearing reconvened shortly thereafter. At this time, Avery's attorney asked that the State afford Avery prosecutorial immunity in exchange for his testimony. The State declined to do so. Avery's attorney requested that the court provide his client with judicial immunity. The court declined, explaining that the concept of judicial immunity does not exist in Ohio. Avery then asserted his Fifth Amendment right against self-incrimination and declined to testify. Cleveland requested a continuance of the hearing until after the lunch hour to allow *Page 4 
Avery time to consider his decision. The State agreed and the court continued the matter until after the lunch hour. When the hearing resumed, Avery reasserted his Fifth Amendment right against self-incrimination and declined to testify. Cleveland moved for an overnight continuance so that Avery could more fully consider his decision. The State objected. The court denied Cleveland's request.
 {¶ 8} Cleveland moved to admit all the exhibits from the five prior Blakely trials and to proffer Avery's testimony as well as the testimony of various alibi witnesses. The trial court declined. Cleveland then moved to admit Avery's affidavit and "deposition" as evidence.[2] The State objected, arguing that the statements were hearsay and were precluded by the Ohio Rules of Evidence because the State was not afforded the opportunity to cross-examine Avery when he made any of these out-of-court statements. Nonetheless, the court stated that it would consider these documents and give them whatever evidentiary weight it deemed appropriate. The court permitted Cleveland to make arguments on the record in support of his actual innocence claim, despite the fact that the claim is not recognized in a post-conviction setting. The court also gave the parties until February 15, 2008 to provide any further argument regarding the issue of Avery's testimony and to submit proposed findings of fact and conclusions of law.
 {¶ 9} Both parties filed timely post-hearing briefs and findings of fact and conclusions of law. Cleveland also filed a motion to reopen the evidentiary hearing and a motion for a new trial. On April 25, 2008, the trial court issued its order, denying Cleveland's motion for new trial, petition for PCR regarding Avery's recantation and motion to reopen the evidentiary hearing. The trial court held that Avery's affidavit and deposition did not entitle Cleveland to a *Page 5 
new trial. Cleveland timely appealed the trial court's order, raising nine assignments of error for our review. We have combined a few of Cleveland's assignments of error to facilitate our review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED IN HOLDING THAT CLAIMS OF FREESTANDING ACTUAL INNOCENCE ARE NOT A COGNIZABLE GROUND FOR RELIEF UNDER THE FEDERAL CONSTITUTION AND OHIO CONSTITUTION."
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED IN DISMISSING PETITIONER'S CLAIMS FOR POST-CONVICTION RELIEF WHEN PETITIONER HAD SATISFIED THE JURISDICTIONAL REQUIREMENTS OF OHIO REVISED CODE 2953.23."
 {¶ 10} In his first assignment of error, Cleveland asserts that the trial court erred in holding that claims of freestanding actual innocence are not a cognizable ground for relief under the Federal Constitution and Ohio Constitution. In his second assignment of error, Cleveland contends that the trial court erred in dismissing his PCR petition when he had satisfied the jurisdictional requirements of R.C. 2953.23. We disagree.
Standard of Review
 {¶ 11} An appellate court reviews the denial of a petition for PCR for an abuse of discretion. State v. Gondor, 112 Ohio St.3d 377,2006-Ohio-6679, at ¶ 58; State v. Stallings, 9th Dist. No. 21969,2004-Ohio-4571, at ¶ 5. An abuse of discretion is more than an error of judgment; rather it necessitates a finding that the trial court was unreasonable, arbitrary or unconscionable in its ruling. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. *Page 6 
 {¶ 12} At the outset, we must address Cleveland's contention that "to the extent the Trial Court adjudicated any mixed questions of law and fact arising under the Federal Constitution on the merits in this case, de novo review on appeal is mandated by the Supremacy Clause." As Cleveland acknowledges, the Ohio Supreme Court has held that we review the grant or denial of a petition for post-conviction relief for an abuse of discretion. Gondor, supra. As we are bound to follow the holdings of the Ohio Supreme Court, we will not depart from this standard of review.
Post-Conviction Relief Standard
 {¶ 13} Pursuant to R.C. 2953.21(A)(2), a petition for post-conviction relief must be filed no later than 180 days after the day the trial transcript is filed in the direct appeal from the judgment of conviction and sentence, or, if no direct appeal is taken, 180 days after the expiration of the time to file an appeal. See App. R. 3(A) 4(A). Here, Cleveland's petition for PCR was filed on July 6, 2006, more than ten years after his conviction. Consequently, his petition was clearly untimely.
 {¶ 14} R.C. 2953.23(A) provides certain factors that, if present, would except a petition from the prescribed filing time. Pursuant to R.C. 2953.23(A)(1), a court has no jurisdiction to hear an untimely filed petition for PCR unless both of the following apply:
 "(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.
 "(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the *Page 7 
sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence."
 Actual Innocence
 {¶ 15} We will first address Cleveland's argument that the trial court erred in finding that claims of freestanding actual innocence are not a cognizable ground for relief under either the Federal or Ohio Constitutions. In Herrera v. Collins (1993), 506 U.S. 390, the United States Supreme Court held that a claim of actual innocence based on newly discovered evidence is not a ground for federal habeas relief absent an independent constitutional violation which occurred in the underlying state criminal proceeding. The Court explained that a defendant who has received all of the safeguards allotted by the Constitution and is ultimately convicted, loses the presumption of innocence. Id. at 399. The Court held that even if it assumed that a petitioner made a truly compelling case of actual innocence after trial which warranted federal habeas relief:
 "because of the very disruptive effect that entertaining claims of actual innocence would have on the need for finality in capital cases, and the enormous burden that having to retry cases based on often stale evidence would place on the States, the threshold showing for such an assumed right would necessarily be extraordinarily high." Id. at 417.
 {¶ 16} In State v. Watson (1998), 126 Ohio App.3d 316, the Twelfth District Court of Appeals, relying on Herrera, refused to recognize a claim of "actual innocence" under the Ohio Constitution in a PCR petition. Id. at 323. The Watson court explained that since the U.S. Supreme Court had declined to recognize "actual innocence" as a constitutional right, it similarly declined to create such a constitutional right. Id. See also State v. Tolbert (Dec. 12, 1997), 1st Dist. No. C-960944 (citing Herrera in rejecting a claim of actual innocence based upon impeaching evidence in a motion for a new trial). A claim of "actual innocence" is more *Page 8 
appropriately contested at trial and in direct appeal on the basis of the weight or sufficiency of the evidence. State v. Turner (Dec. 31, 2001), 4th Dist. No. 01CA2786, at *2.
Judicial Estoppel
 {¶ 17} Cleveland further contends that the doctrine of judicial estoppel bars the State from contending that Avery's trial testimony was truthful after it threatened a multi-count perjury indictment at the January 31, 2008 hearing. Contrary to Cleveland's assertions, judicial estoppel is inapplicable to this matter. The Ohio Supreme Court has explained that
 "The doctrine of judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding. Courts apply judicial estoppel in order to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposing to suit an exigency of the moment. The doctrine applies only when a party shows that his opponent: (1) took a contrary position; (2) under oath in a prior proceeding; and (3) the prior position was accepted by the court. Courts have applied this doctrine when inconsistent claims were made in bankruptcy proceedings that predated a civil action." (Internal citations and quotations omitted.) Greer-Burger v. Temesi, 116 Ohio St.3d 324, 2007-Ohio-6442, at ¶ 25.
 {¶ 18} Cleveland has failed to cite, and this Court could not find, an Ohio criminal case in which this doctrine has been applied. To the contrary, this doctrine has been rejected by Ohio courts in criminal cases. See State v. Nunez, 2d Dist. No. 21495, 2007-Ohio-1054 (rejecting the State's argument that Nunez was judicially estopped from challenging his sentence pursuant to State v. Foster); State v. Burgess, 2d Dist. No. 21315, 2006-Ohio-5309 (rejecting the State's argument that Burgess was judicially estopped from challenging his sentence pursuant toState v. Foster); State v. Garretson (Dec. 7, 1998), 12th Dist. No. CA98-03-023 (rejecting application of judicial estoppel). *Page 9 
 Miscarriage of Justice
 {¶ 19} Cleveland contends that the trial court erred in dismissing his other PCR claims (those unrelated to Avery's recantation) because these claims are "gateway" claims of actual innocence, also known as the miscarriage of justice doctrine, which the U.S. Supreme Court has recognized in the context of federal habeas corpus proceedings. Cleveland argues that R.C. 2953.23 is the legislative codification of the miscarriage of justice doctrine. He contends that in State v.Steffen (1994), 70 Ohio St.3d 399, the Ohio Supreme Court held that the miscarriage of justice doctrine is applicable to collateral proceedings. We disagree.
 {¶ 20} In Steffen, the Ohio Supreme Court used the "cause and prejudice" standard[3] which encompasses the "miscarriage of justice" doctrine as the standard to use in determining whether further review and/or stay of a case was warranted in a death penalty case where the defendant had exhausted his direct appeals. Steffen, in contrast to Cleveland, had been sentenced to death. The Supreme Court never addressed the application of the cause and prejudice standard/miscarriage of justice doctrine to non-capital defendants such as Cleveland. Id. Moreover, Cleveland has failed to cite any authority for the proposition that Steffen applies to every non-capital case in every post-conviction proceeding. *Page 10 
 {¶ 21} The Eleventh District Court of Appeals also reached this conclusion in Pough, supra, wherein it held that Ohio courts have only applied the "cause and prejudice" standard in two situations. Id. at fn.1. The Pough court explained:
 "The first concerns the circumstances in which a court may refuse to consider the repeated postconviction relief petitions of death row inmates. See, e.g., State v. Steffen (1994), 70 Ohio St.3d 398, 411-412. In the second situation, courts has [sic] cited to McCleskey for the proposition that the principles of res judicata apply to postconviction relief proceedings. See, e.g., State v. Apanovitch (1995), 107 Ohio App.3d 82, 87-90." Id. at fn.1.
 {¶ 22} Cleveland infers, without citation to authority, that the Ohio General Assembly amended R.C. 2953.23 in response to Steffen. The Ohio Supreme Court issued its decision in Steffen on September 28, 1994. R.C. 2953.23 has been amended three times since Steffen was decided. Cleveland has failed to identify the amendment that was made in response to Steffen. However, even if an amendment to R.C. 2953.23 was the legislative codification of the miscarriage of justice doctrine, Cleveland has failed to demonstrate that the doctrine is applicable to his case. Such a liberal reading of R.C. 2953.23 defeats the purpose of the statute and contravenes the goal of providing finality to judgments of convictions. See Gondor, supra, at ¶ 47, quoting Steffen,70 Ohio St.3d at 410. Accordingly, we find no error in the trial court's decision summarily denying all Cleveland's claims for relief other than those relating to Avery's recantation.
Unavoidably Prevented
 {¶ 23} Cleveland also argues that the trial court improperly denied his petition for PCR because the trial court misinterpreted the term "unavoidably prevented". According to Cleveland, the term "unavoidably prevented", as set forth in R.C. 2953.23, means that the defendant was prevented from discovering evidence of actual innocence prior to trial. Cleveland contends that he was not required to demonstrate that he was unavoidably prevented from *Page 11 
discovering the evidence of his constitutional violations. Notably, Cleveland has cited no case law in support of this argument. "It is the duty of the appellant, not this court, to demonstrate [his] assigned error through an argument that is supported by citations to legal authority and facts in the record." State v. Taylor (Feb. 9, 1999), 9th Dist. No. 2783-M, at *3. "[F]ailure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal."Kremer v. Cox (1996), 114 Ohio App.3d 41, 60. As Cleveland has failed to substantiate this argument, we need not address it. See App. R. 16(A)(7); Loc. R. 7(A)(6).
 {¶ 24} Cleveland contends that his conviction is void or voidable on the grounds that he was unavoidably prevented from discovering evidence of Avery's recantation prior to the expiration of the statute of limitations. Upon review, we find that Cleveland has failed to satisfy the requirements outlined in R.C. 2953.23(A). Cleveland's PCR petition is based on the "recent" recantation of Avery. The record reflects that Avery did not recant at the January 31, 2008 hearing; rather, he asserted his Fifth Amendment right against self-incrimination. Consequently, the only "recanting" at issue is contained in Avery's affidavit and "deposition". The "deposition" has no evidentiary value and was inadmissible as it was merely an interview conducted by an investigator in the presence of a court reporter. There were no attorneys present at the "deposition" and thus, no opportunity for cross-examination. This Court has held that in order for a deposition to be admissible into evidence, "the party against whom the deposition is offered must have had an opportunity to cross-examine the deponent."Diversified Benefit Plans Agency, Inc. v. Duryee (1995),101 Ohio App.3d 495, 502, citing Depositions-Admission in Evidence (1965), 4 A.L.R.3d 1075, 1079.
 {¶ 25} Even if we grant evidentiary value to the affidavit and/or deposition, Cleveland has still failed to demonstrate that a constitutional error was committed at trial. See *Page 12 
R.C. 2953.23(A)(1)(b); State v. Lott, 8th Dist. Nos. 79790, 79791 and 79792, 2002-Ohio-2752, at ¶ 55. "Postconviction relief is available only to redress constitutional violations." State v. Callihan (Feb. 28, 1995), 4th Dist. No. 94 CA 2249, at *2, quoting State v. Kimble (Sept. 22, 1988), 8th Dist. No. 54154. This Court has held that the recantation of a key trial witness does not rise to the level of a constitutional violation that is required before a trial court is able to grant post-conviction relief. State v. Elkins (Aug. 27, 2003), 9th Dist. No. 21380, at *2. Further, evidence of perjury, without proof that the State had knowledge of the perjury, does not implicate constitutional rights and therefore, cannot support a petition for PCR. State v. Isham (Jan. 24, 1997), 2d Dist. No. 15976, at *2.
 {¶ 26} The State attached three affidavits to its motion in opposition to Cleveland's motion for PCR, including the affidavits of Jonathan Rosenbaum, the Lorain County Prosecutor who argued the case at trial, and two police officers who were chiefly involved in the investigation of this case. The affiants testified that they neither believed nor suspected that any testimony offered by the State at Cleveland's trial was false. Id. Accordingly, Cleveland has not satisfied the requirements of R.C. 2953.23(A)(2) and the trial court lacked jurisdiction to entertain his untimely petition.
 {¶ 27} Because the petitioner failed to meet any of the requirements under R.C. 2953.23, the trial court did not have jurisdiction to consider his untimely petition under this statute. See State v.Childs (Feb. 16, 2000), 9th Dist. No. 19757. Thus, we conclude that the trial court did not abuse its discretion when it dismissed Cleveland's petition as untimely and held that claims of actual innocence are not a cognizable ground for relief under the U.S. and/or Ohio Constitutions. Cleveland's first and second assignments of error are not well taken. *Page 13 
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRED IN OVERRULING PETITIONER'S MOTION TO HOLD OHIO REVISED CODE 2953.23 UNCONSTITUTIONAL."
 {¶ 28} In his third assignment of error, Cleveland contends that the trial court erred in overruling his motion to find R.C. 2953.23
unconstitutional. More specifically, Cleveland asserts that R.C. 2953.23
violates the Supremacy Clause, the Suspension Clause of the Ohio Constitution and the Equal Protection Clause. We disagree.
 {¶ 29} At the outset, we note that "[a]n enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." State ex rel. Dickman v. Defenbacher (1955),164 Ohio St. 142, paragraph one of the syllabus. R.C. 2953.21(A)(1) requires a postconviction petitioner to demonstrate a denial or infringement of his rights in the proceedings resulting in his conviction that rendered the conviction void or voidable under the state or federal constitution. The constitutional deprivations asserted by Cleveland did not occur during the proceedings resulting in his convictions. Further, a determination that the postconviction statutes were constitutionally infirm would not have rendered his convictions void or voidable.
 {¶ 30} Moreover, Ohio courts have consistently held that "`R.C. 2953.23(A)(2) is constitutional and does not violate the Supremacy Clause[.]'" State v. Smith, 9th Dist. No. 04CA008546, 2005-Ohio-2571, at ¶ 8, quoting State v. Taylor, 8th Dist. No. 80271, 2002-Ohio-2742 at ¶ 13, and citing State v. Davie (Dec. 21, 2001), 11th Dist. No. 2000-T-0104; State v. Byrd (2001); 145 Ohio App.3d 318; State v.McGuire (Apr. 23, 2001), 12th Dist. No. CA2000-10-011, at *25. Based on this Court's previous examination of the constitutionality of *Page 14 
R.C. 2953.23(A)(2) as well as the numerous holdings by other Ohio courts, we find that the trial court did not err in finding that R.C. 2953.23 is not unconstitutional. Id., at ¶ 8.
 {¶ 31} We overrule Cleveland's third assignment of error.
 ASSIGNMENT OF ERROR IV "PETITIONER'S RIGHTS UNDER THE OHIO CONSTITUTION AND THE FEDERAL CONSTITUTION TO COMPULSORY PROCESS, DUE PROCESS OF LAW AND DUE COURSE OF LAW WERE VIOLATED WHEN THE PROSECUTION DELIBERATELY INTERFERED WITH THE DECISION OF A DEFENSE WITNESS TO TESTIFY."
 ASSIGNMENT OF ERROR V "THE TRIAL COURT ERRED IN ADVISING WILLIAM AVERY JR. THAT HE COULD BE SUBJECT TO CRIMINAL LIABILITY FOR PERJURY, AND IN PERMITTING AVERY JR. TO INVOKE HIS RIGHT AGAINST SELF-INCRIMINATION, WHEN THE STATUTE OF LIMITATIONS FOR THE PERJURY OFFENSES IN QUESTION HAD EXPIRED."
 ASSIGNMENT OF ERROR VI "THE TRIAL COURT ERRED IN DENYING PETITIONER'S MOTION TO REPOPEN THE EVIDENTIARY HEARING."
 ASSIGNMENT OF ERROR VII "PETITIONER'S RIGHTS UNDER THE OHIO CONSTITUTION AND THE FEDERAL CONSTITUTION TO COMPULSORY PROCESS, DUE PROCESS OF LAW AND DUE COURSE OF LAW WERE VIOLATED WHEN THE TRIAL COURT QUESTIONED WILLIAM AVERY JR. IN AN IMPERMISSABLY COERCIVE MANNER."
 {¶ 32} Cleveland's fourth, fifth, sixth and seventh assignments of error are interrelated and accordingly, we will address them together. In his fourth assignment of error, Cleveland asserts that his due process rights were violated when the State deliberately interfered with Avery's decision to testify. In his fifth assignment of error, Cleveland also asserts that the trial court erred in advising Avery that he could be subject to criminal liability for perjury and in permitting Avery to invoke his right against self-incrimination when the statute of limitations for *Page 15 
the perjury offenses had expired. In his sixth assignment of error, Cleveland argues that the trial court erred in denying his motion to reopen the evidentiary hearing. Lastly, in his seventh assignment of error, Cleveland asserts that his due process rights were violated when the trial court questioned Avery in an impermissible manner. We disagree.
 {¶ 33} With regard to Cleveland's due process arguments, we note that Cleveland has failed to demonstrate that the State interfered with Avery's decision to testify. First and foremost, Cleveland cites to page 30 of the transcript to support his contention that the State made it clear that it would prosecute Avery for perjury if he testified. Nowhere on this page does the State even mention perjury. However, it is patently clear from the record that if Avery testified in accordance with the testimony he gave in his deposition and affidavit, then he could be subject to perjury charges. Further, Avery's appointed counsel, Kenneth Ortner, testified via affidavit dated February 21, 2008, that he counseled Avery about whether the State could charge him with perjury if he testified at the hearing contrary to his prior testimony. Ortner averred that it was his professional opinion that the State could bring anywhere from four to six counts of perjury against Avery if he testified at the hearing. He further stated that, based on Ohio law, the maximum penalty Avery faced if he testified at the hearing was 20 to 30 years of incarceration. Accordingly, we find no evidence that the State "deliberately interfered" with Avery's decision to testify.
 {¶ 34} Contrary to Cleveland's assertions, the statute of limitations for perjury had not expired at the time of the hearing. R.C. 2921.11
proscribes perjury and states that "[n]o person, in any official proceeding, shall knowingly make a false statement under oath or affirmation, or knowingly swear or affirm the truth of a false statement previously made, when either statement is material." R.C. 2921.11(A). Further, R.C. 2921.11(D) states that "[w]here contradictory *Page 16 
statements relating to the same material fact are made by the offender under oath or affirmation and within the period of the statute of limitations for perjury, it is not necessary for the prosecution to prove which statement was false, but only that one or the other was false." Pursuant to R.C. 2921.11, perjury is a felony of the third degree. R.C. 2901.13(A)(1)(a) provides that prosecution for a felony is barred unless it is commenced within six years after the offense is committed. The period of limitations shall not run during anytime when the corpus delicti remains undiscovered. R.C. 2901.13(F).
 {¶ 35} It is, at the least, arguable that if Avery testified under oath at the January 2008 hearing differently than he did at the five previous trials with regard to Blakely's murder, he could be prosecuted for perjury because the limitations period would have been tolled until the State "discovered" the perjury. At the earliest, the State could only have discovered the perjury after it received Avery's February 2006 affidavit or his April 2006 deposition in which he recanted his trial testimony. Although Cleveland asserts that the State "knew" about this alleged perjury prior to 2006, the State refuted this allegation in its response to Cleveland's PCR petition to which the State attached the affidavits of Jonathan Rosenbaum, the Lorain County Prosecutor who argued the case at trial, and two police officers who were chiefly involved in the investigation of this case. The affiants testified that they neither believed nor suspected that any testimony offered by the State at Cleveland's trial was false.
 {¶ 36} However, in State v. Climaco, Climaco, Seminatore, Lefkowitz Garofoli Co., L.P.A. (1999), 85 Ohio St.3d 582, the Ohio Supreme Court seemingly removed the delayed discovery tolling provision of R.C. 2901.13(F). In Climaco, "the Supreme Court held that the defendants could not be prosecuted for a falsification made more than two years before the prosecution commenced despite the fact the falsification remained undiscovered for a substantial *Page 17 
period during the two year limitations period." State v. Williams, 2d Dist. No. 19854, 2004-Ohio-3135, at ¶ 36. In the dissent inClimaco, Chief Justice Moyer along with Justice Cook stated that the majority "`has, in fact, read it (subsection F) out of the statutory scheme.'" Id., quoting Climaco, 85 Ohio St.3d at 591.
 {¶ 37} A reading of the perjury statute without the delayed discovery provision belies logic. Such a construction would permit a witness to testify at trial and then six years later, retract his testimony with no consequences. This interpretation would completely undermine the reliability of all witness testimony. We hesitate to find that the Supreme Court intended such a result.
 {¶ 38} Moreover, Climaco involved misdemeanor falsification charges, not perjury, and is distinguishable from the within matter. The statute of limitations for misdemeanor charges is two years. R.C. 2901.13(A)(1)(b). Further, the Supreme Court in Climaco "specifically declined to apply R.C. 2901.13(F) to alleged offenses that werediscovered within the statute of limitations that began to run when the offenses were committed." (Emphasis added.) State v. Martin (Nov. 19, 2001), 4th Dist. No. 00CA28, at *9. The Supreme Court explained "that because the plain language of R.C. 2901.13(F) tolls the statute of limitations until discovery (that is, the statute of limitations should not begin to run until discovery), the crime could not be `discovered'during the limitations period." (Emphasis sic.) Id. Notably, the Supreme Court did not explain when R.C. 2901.13(F) would apply. The Court noted, however, that it did not need to "resort to subsection (F) because the alleged offenses were discovered within the statute of limitations of R.C. 2901.13(A)(2)[.]" Climaco, 85 Ohio St.3d at 588. We conclude, based on the latter sentence, that R.C. 2901.13(F) may apply in the within matter because the perjury offense, if any, was not discovered until after the State received Avery's February 2006 affidavit *Page 18 
or his April 2006 deposition. Accordingly, the offense, if any, was not discovered until after the six-year statute of limitations (as measured from the dates of Avery's prior trial testimony in the mid-1990's) had expired. See Martin, supra at *10.
 {¶ 39} Even assuming that Avery could not be prosecuted for perjury for his testimony in any of the five Blakely trials in the event he testified differently in the January 2008 hearing, nonetheless he was at risk for being prosecuted for perjury if he lied at the January 2008 hearing.
 {¶ 40} Cleveland argues that the trial court's colloquy with Avery, which included the reading of his Miranda rights, was impermissibly coercive. We cannot find that the trial court impermissibly questioned Avery. The statute of limitations for perjury had not expired. Further, the record reflects that Cleveland did not object to the trial court's discussion with Avery and specifically, Cleveland raised no objection to the reading of Avery's Miranda rights. A failure to object waives all but plain error. See State v. Coley (2001), 93 Ohio St.3d 253, 265. Therefore, absent plain error, this issue is not properly before this Court. See McNeal v. Dept. of Youth Servs. (Jan. 15, 1988), 6th Dist. No L-87-086, at *2. Cleveland has not raised plain error, nor has he demonstrated why this Court should examine this issue for the first time on appeal. State v. Meyers, 9th Dist. Nos. 23864, 23903, 2008-Ohio-2528, at ¶ 42, citing In re L.A.B., 9th Dist. No. 23309, 2007-Ohio-1479, at ¶ 19. However, notwithstanding this fact, Cleveland's argument has no merit. In State ex rel. Simons v. Kiser (1950), 46 O.O. 11, the court stated that "a witness in a civil case is not required to give testimony which will tend to incriminate him and this immunity is referable to the constitutional guarantee against self-incrimination in criminal cases." Given Avery's right not to incriminate himself, we find that the trial court properly informed Avery as to this right. See McNeal, supra, at *2. *Page 19 
 {¶ 41} Lastly, Cleveland challenges the trial court's denial of his motion to reopen the evidentiary hearing. In his motion, Cleveland asserted that because Avery could not be prosecuted for committing perjury, the trial court erred in advising him to the contrary and permitting him to exercise his Fifth Amendment rights. Cleveland argued that Avery should have been required to testify.
 {¶ 42} The record reflects that Cleveland failed to raise an objection at the hearing regarding this issue. Cleveland has, therefore, "forfeited all but plain error for purposes of appeal." State v.Cadle, 9th Dist. No. 24064, 2008-Ohio-3639, at ¶ 14, citing State v.Payne, 114 Ohio St.3d 502, 2007-Ohio-4642, at ¶ 22-23. Cleveland has not requested, however, that we review the issue for plain error, nor has he demonstrated why we should delve into this issue for the first time on appeal. Meyers, supra, at ¶ 42, citing In re L.A.B., supra, at ¶ 19. We therefore, decline to address this issue. In re L.A.B., at ¶ 19. Cleveland's fourth, fifth, sixth and seventh assignments of error are overruled.
 ASSIGNMENT OF ERROR VIII "THE TRIAL COURT ERRED IN DENYING PETITIONER'S MOTION FOR LEAVE TO BRING A MOTION FOR A NEW TRIAL WITH REGARD TO VARIOUS CLAIMS."
 ASSIGNMENT OF ERROR EX "THE TRIAL COURT ERRED IN DENYING PETITIONER'S MOTION FOR A NEW TRIAL."
 {¶ 43} In his eighth and ninth assignments of error, Cleveland asserts that the trial court erred in denying both his motion for leave to bring a motion for a new trial and his motion for a new trial. We disagree.
 {¶ 44} In his motion for leave to bring a motion for a new trial, Cleveland alleged three grounds for a new trial including (1) ineffective assistance of counsel, (2) prosecutorial and *Page 20 
witness misconduct and (3) newly discovered evidence. The trial court denied Cleveland's motion for leave to bring a motion for a new trial except as it pertained to the recantation of Avery.
 {¶ 45} "A trial court's ruling on a motion for a new trial under Crim. R. 33 will be reversed only for an abuse of discretion." State v.Herb, 167 Ohio App.3d 333, 2006-Ohio-2412, at ¶ 6, citing State v.Haddix (1994), 93 Ohio App.3d 470, 480. "An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling." State v.Travis, 9th Dist. No. 06CA0075-M, 2007-Ohio-6683, at ¶ 24, citingBlakemore, 5 Ohio St.3d at 219. In applying the abuse of discretion standard, the appellate court does not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621. Further, this Court has previously stated that "the decision on whether the motion warrants a hearing also lies within the trial court's discretion." State v. Smith (1986), 30 Ohio App.3d 138, 139.
 {¶ 46} "Claims of ineffective assistance of counsel on appeal, like most other claims in litigation, must be raised at the earliest opportunity to do so." State v. Walker (June 20, 2000), 8th Dist. No. 74773, at *6, citing State v. Williams (1996), 74 Ohio St.3d 454. The Eighth District, in Walker, further explained that
 "When, as in this case, a defendant obtains new counsel to pursue an appeal from a decision of this court to the Supreme Court of Ohio, or when a defendant chooses to proceed pro se to the Supreme Court of Ohio after being represented by counsel, the earliest opportunity to raise the federal constitutional claim of ineffective assistance of appellate counsel, absent extraordinary circumstances, would be in a claimed appeal of right. The failure to do so operates as a bar to any further review of the ineffective assistance claim under the principles of res judicata, unless there is a demonstration under an applicant's circumstances that the application of res judicata would be unjust." (Internal citations omitted.) Walker, at *6. *Page 21 
 {¶ 47} Here, Cleveland's trial counsel also represented him in his direct appeal to this Court. Consequently, the earliest opportunity for Cleveland to raise ineffective assistance of his trial counsel would have been in his claimed appeal of right to the Ohio Supreme Court, which he filed pro se, or in his delayed application for reopening. Id. at *5. The State alleges that Cleveland failed to raise this issue in his appeal to the Ohio Supreme Court. The record reflects, however, that Cleveland raised the issue of the alleged ineffectiveness of his trial/appellate counsel in his appeal to the Ohio Supreme Court. In addition, he raised the issue in this Court in his application for reopening. The Ohio Supreme Court dismissed his appeal as not involving any substantial constitutional question. This Court denied Cleveland's motion for reopening.
 {¶ 48} The principles of res judicata may be applied to bar further litigation of issues which were raised or could have been raised previously in an appeal. See, generally, State v. Perry (1967),10 Ohio St.2d 175, paragraph nine of the syllabus. In the present case, Cleveland presented his claim of ineffective assistance of counsel to this Court in his delayed motion for reopening. This Court issued a journal entry on July 29, 1997, denying Cleveland's delayed application. That failed opportunity now bars consideration of this claim. Cleveland's current appellate counsel has not demonstrated why it would be unjust to apply res judicata now to bar our further review of this argument. Walker, supra, at *6.
 {¶ 49} Pursuant to Crim. R. 33(B), if a defendant fails to file a motion for a new trial based on newly discovered evidence within 120 days of the jury's verdict or court's decision, then he or she must seek leave from the trial court to file a "delayed motion." State v.Berry, 10th Dist. No. 06AP-803, 2007-Ohio-2244, at ¶ 19. Cleveland correctly asserts that Crim. R. 33(B) does not provide a specific time limit for the filing of a motion for leave to file a delayed motion for new trial. However, Ohio courts have adopted a reasonableness standard.State v. Griffith, *Page 22 
11th Dist. No. 2005-T-0038, 2006-Ohio-2935, at ¶ 15. "`A trial court may require a defendant to file his motion for leave to file [a motion for new trial] within a reasonable time after he discovers the evidence.'State v. Newell, 8th Dist. No. 84525, 2004-Ohio-6917, at ¶ 16." Id.; see, also, Berry, supra, at ¶ 38, quoting State v. Stansberry (Oct. 9, 1977), 8th Dist. No. 71004. If there has been "`an undue delay in filing the motion after the evidence was discovered, the trial court must determine if that delay was reasonable under the circumstances or that the defendant has adequately explained the reason for the delay.'"Griffith, at ¶ 16 and Berry, at ¶ 38 quoting Stansberry.
 {¶ 50} Cleveland argues that his ten-year delay in filing his motion "was reasonable because the investigations in support of his claims have been in progress for years, and it was reasonable for [him] to submit all of his claims in a single proceeding after marshaling all of the evidence in support." Upon review, we cannot find that Cleveland's delay in filing his motion with regard to issues unrelated to Avery was reasonable.
 {¶ 51} First and foremost, Cleveland has cited no authority for the proposition that it was reasonable for him to submit all of his claims in a single proceeding after gathering evidence for the past ten years or so. An appellant bears the burden of affirmatively demonstrating error on appeal. Concord Twp. Trustees v. Hazelwood Builders (Mar. 23, 2001), 11th Dist. No. 2000-L-040, at *2. It is not the obligation of an appellate court to search for authority to support an appellant's argument as to an alleged error. See Kremer v. Cox (1996),114 Ohio App.3d 41, 60. Further, Crim. R. 33(B) does not allow a defendant to wait for further evidence to arise that will bolster his case.Berry, supra, at ¶ 39.
 {¶ 52} Secondly, notwithstanding his arguments regarding Avery's recantation, which we will address separately, Cleveland has failed to specifically explain his delay in presenting his *Page 23 
"newly discovered evidence". Some of the over 20 items of newly discovered evidence included the June 13, 2001 and July 22, 2006 affidavits of David Alexander Donaphin, June 6, 2000 and August 10, 2000 certified records of the New York City Department of Probation, August 1991 flight schedule, October 2005 and March 2005 affidavits of Larry Dehus, October 2004 affidavit of Fontella Mays, February 2005 affidavit of Ayasha Teague, April 2002 affidavit of Brian Daniels, September 2001 affidavit of Patricia Gaddy, affidavit of Yolanda Johnson[4], and the affidavit of Delphenia Guice.
 {¶ 53} A review of Cleveland's motion for leave to file a motion for a new trial reveals that his only explanation for his delay in presenting his newly discovered evidence, most of which is several years old, is that this evidence was "not previously available to him." Cleveland further states that "many of [his] other exhibits resulted from lengthy investigations[.]" Lastly, he vaguely states that "[b]ecause the factual predicates upon which [he] is relying were not previously available to him, he was unavoidably prevented from raising these issues prior to the expiration of the limitations period under Criminal Rule 33." None of these explanations persuade us that Cleveland's delay was reasonable under the circumstances. Further, none of these assertions adequately explain the reasons for his delay in filing his motion. Berry, supra, at ¶ 39 (finding unreasonable a two-year delay in presenting a letter by a trial witness recanting his trial testimony where the appellant's only reason for the delay in filing his motion for leave to file a motion for a new trial was his desire to build a stronger case); SeeGriffiths, supra, at ¶ 18-19 (denying leave to file a motion for new trial where the appellant failed to explain the 14-month delay between the discovery of new evidence and the filing of his motion for leave to file *Page 24 
his delayed motion for new trial); State v. Roberts (2001),141 Ohio App.3d 578 (finding five-month delay in filing motion for leave unreasonable where the appellee failed to argue facts demonstrating that he was unavoidably prevented from discovering the evidence upon which his motion was based).
 {¶ 54} Contrary to Cleveland's contention, the decision as to whether to conduct an evidentiary hearing on a motion for leave to file a motion for a new trial is discretionary and not mandatory. Smith,30 Ohio App.3d at 139. A defendant is only entitled to a hearing on a motion for leave to file a motion for a new trial if he submits documents which, on their face, support his claim that he was unavoidably prevented from timely discovering the evidence at issue. State v. McConnell,170 Ohio App.3d 800, 2007-Ohio-1181, at ¶ 7. Here, the documents Cleveland submitted in support of his motion did not, on their face, demonstrate that he was unavoidably prevented from discovering the evidence at issue. Rather, the documents demonstrate that Cleveland had this evidence for a number of years prior to the filing of his motion for leave to file a motion for a new trial. On that basis, we find that the trial court did not abuse its discretion when it denied Cleveland's motion for leave to file a motion for new trial without holding an evidentiary hearing.
 {¶ 55} Pursuant to Crim. R. 33(A):
 "A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
 "(6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given[.]" *Page 25 
 {¶ 56} This Court has held that before a trial court may grant a motion for a new trial on the grounds that a witness has recanted his or her testimony, a trial court must determine whether the statements of the recanting witness are credible and true. State v. Perez (Sept. 27, 2000), 9th Dist. No. 3045-M, at *4. See, also, State v. Pirman (1994),94 Ohio App.3d 203, 209. "The credibility of witnesses is normally within the province of the trial judge and the trial court may in the exercise of its discretion determine a recantation to be false."State v. Williams, 2d Dist. No. 19854, 2004-Ohio-3135, at ¶ 17. "Courts have long regarded newly discovered evidence which purports to recant sworn trial testimony with the utmost suspicion." Id., citing Taylor v.Ross (1948), 150 Ohio St. 448. In Taylor, the Supreme Court noted that a defendant is not entitled to a new trial merely because a key state's witness recanted. Id.
 {¶ 57} "To warrant the granting of a new trial, the new evidence must, at the very least, disclose a strong probability that it will change the result if a new trial is granted." State v. Starling, 10th Dist. No. 01AP-1344, 2002-Ohio-3683, at ¶ 13. The petitioner has the burden of demonstrating that the newly discovered evidence created a strong probability of a different result if a new trial was granted. Id. citingState v. Luckett (2001), 144 Ohio App.3d 648, 661.
 {¶ 58} Here, the recantation only appeared in Avery's affidavit and "deposition". As this Court previously explained, the "deposition" has no evidentiary value and was inadmissible as it was merely an interview conducted by an investigator in the presence of a court reporter. The trial court held that Avery's affidavit and deposition were not credible because he was not willing to corroborate these statements through live testimony at the hearing. We cannot find that the trial court abused its discretion in reaching this conclusion.
 {¶ 59} Cleveland alleges that "[t]he only reasonable inference that can be drawn from Avery Jr.'s invocation of his Fifth Amendment rights is that his recantation was truthful, and that *Page 26 
he committed perjury at the Blakely murder trials[.]" While we agree that this is one inference that can be drawn, we disagree that it is the only "reasonable inference". One could also reasonably infer that Avery invoked his Fifth Amendment rights at the hearing because the purported recantation was untruthful. Jail house phone records reflect that Cleveland and his counsel advised Avery that he would not be subject to perjury if he recanted at this time. Furthermore, the phone records reflect conversations between Cleveland and his father, wife and attorney, in which the parties express concern that anyone link Cleveland with the compensation Avery would receive in exchange for his testimony.
 {¶ 60} Cleveland asserts that the only reason Avery did not testify at the evidentiary hearing was that the State deliberately prevented him from testifying by threatening him with perjury charges. In light of our disposition of this argument as set forth in Cleveland's fourth assignment of error, we need not address this again.
 {¶ 61} The only evidence of Avery's recantation is in his affidavit and "deposition". Consequently, his "recantation" was never subject to cross-examination. Further, when given the opportunity in court, Avery was unwilling to take the witness stand to testify under oath to the statements he made in his affidavit. Instead, Avery asserted his Fifth Amendment right not to incriminate himself. The trial court viewed Avery's affidavit and "deposition" with "the utmost suspicion" and reasonably inferred that the statements contained in the affidavit and/or "deposition" were untrue and that Avery's sworn trial testimony was true. Williams, supra, at ¶ 17, citing Taylor, 150 Ohio St. 448.
 {¶ 62} Avery gave consistent lengthy testimony, subject to vigorous cross-examination, in the five Blakely trials before recanting several years later. A careful review of the affidavit and deposition reveals inconsistencies regarding Avery's explanation of his trial testimony. *Page 27 
Avery avers that the trial testimony was based on a story fabricated by his father while also contending that he created his version of the murder after viewing crime scene photos supplied to him by law enforcement officials. These inconsistencies provide yet another basis for the trial court to believe Avery's trial testimony and disbelieve his recantations.
 {¶ 63} Furthermore, Detective Taliano's affidavit further negates the credibility of Avery's contention that he was only able to describe the crime scene after law enforcement officials showed him photographs. Detective Taliano specifically testified that in his initial meeting with Avery, Avery was able to relate specific details of the crime scene that he could only have known had he been present during the murder. Detective Taliano swore that he never showed Avery any crime scene photos.
 {¶ 64} In addition, we are mindful that we must give deference to the trial court's assessment of Avery's credibility. Upon its review of Avery's testimony in the five previous trials, his affidavit and "deposition", the trial court determined that Avery's recantation was false. Williams, supra, at ¶ 17.
 {¶ 65} This Court has held that if the trial court determines that the recantation is truthful, and therefore more credible than the witness' trial testimony, then the court must determine whether the statements would materially affect the outcome of the trial. Elkins, supra, at ¶ 16. Given our affirmance of the trial court's finding that the recantation was untruthful, we need not consider whether Avery's affidavit would materially affect the outcome of the trial. Id.;Starling, supra, at ¶ 13.
 {¶ 66} Accordingly, we find that the trial court did not abuse its discretion when it denied Cleveland's motions for leave to file a delayed motion for new trial and/or motion for a new trial. Therefore, Cleveland's eighth and ninth assignment of error are overruled. *Page 28 
 III. {¶ 67} Cleveland's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
SLABY, J., DICKINSON, J. CONCUR.
[1] Avery testified in five trials related to the Blakely murders. One of Cleveland's co-defendants, Lenworth Edwards, was granted a mistrial.
[2] The "deposition" was an interview conducted by an investigator in the presence of a court reporter. There were no attorneys present at the "deposition".
[3] The "cause and prejudice" standard provides as follows:
 "`In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" State v. Pough, 11th Dist. No. 2003-T-0129, 2004-Ohio-3933, at ¶ 13, quoting Coleman v. Thompson (1997), 501 U.S. 722, 750.
[4] The affidavits of Yolanda Johnson and Delphenia Guice were handwritten. The handwritten dates on these affidavits have been obscured by repeated photocopy. *Page 1