[Cite as *State v. Williams*, 2017-Ohio-8475.]

STATE OF OHIO        )                IN THE COURT OF APPEALS
)ss:            NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

STATE OF OHIO                     C.A. No.      28572

      Appellee

      v.                          APPEAL FROM JUDGMENT
                                    ENTERED IN THE
CAMERON D. WILLIAMS           COURT OF COMMON PLEAS
                                    COUNTY OF SUMMIT, OHIO
      Appellant                CASE No.     CR 2007-08-2540

DECISION AND JOURNAL ENTRY

Dated: November 8, 2017

---

TEODOSIO, Judge.

{¶1} Defendant-Appellant, Cameron Williams, appeals from the judgment of the Summit County Court of Common Pleas, denying his motion for leave to file a motion for new trial. This Court affirms.

I.

{¶2} "This case has a long procedural history which has been discussed in varying amounts of detail by this Court and the Supreme Court of Ohio." *State v. Williams*, 9th Dist. Summit No. 27101, 2014-Ohio-1608, ¶ 2.

> On July 28, 2007, [Mr.] Williams broke into an apartment rented by Tamara Hughes, his ex-wife, and shot and killed Darien Polk, whom he found sleeping with her in her bed. [Mr.] Williams then kidnapped [Ms.] Hughes at gunpoint, took her to an abandoned home, and engaged in sexual conduct with her. Akron police arrested him the next day.

*State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658, ¶ 4. After his arrest, Mr. Williams confessed to having shot and killed Mr. Polk. He admitted that

he entered [Ms.] Hughes' bedroom and was mad when he saw [Mr.] Polk in "his" bed with [Ms.] Hughes. [Mr.] Williams stated that he leaned over the bed, put the gun to [Mr.] Polk's head and pulled the trigger. He stated that the gun "clicked" without firing, so he pulled the slide back on the gun to chamber a round and fired 3-4 more times. [Mr.] Williams stated that [Ms.] Hughes and [Mr.] Polk had awakened after the gun misfired, that he pushed [Ms.] Hughes out of the way, and that he kept firing as [Mr.] Polk rose from the bed and started to approach. [Mr.] Williams told the police that he "snapped" when he saw [Mr.] Polk's car and "passed out" and "lost it" upon seeing [Mr.] Polk in bed. [Mr.] Williams told the police that, after shooting [Mr.] Polk, he forced [Ms.] Hughes to get dressed and leave with him. [A] surveillance video show[ed] that 84 seconds elapsed from the time [Mr.] Williams entered [Ms.] Hughes' apartment through the kitchen window until he and [Ms.] Hughes exited the apartment together through the front door.

*State v. Williams*, 9th Dist. Summit No. 24169, 2009-Ohio-3162, ¶ 19. Ms. Hughes testified against Mr. Williams at trial and confirmed that he shot Mr. Polk before forcing her from her apartment at gunpoint.

{¶3} Mr. Williams was convicted of aggravated murder, as well as a number of other counts and specifications. The trial court sentenced him to life in prison with parole eligibility after 69 years. Over the years, Mr. Williams filed a wealth of post-judgment motions, including petitions for post-conviction relief, motions for new trial, and motions for resentencing. His motions have resulted in six appeals before this Court and two appeals before the Ohio Supreme Court. *See State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658; *State ex rel. Williams v. Hunter*, 138 Ohio St.3d 511, 2014-Ohio-1022; *State v. Williams*, 9th Dist. Summit No. 27963, 2016-Ohio-4943; *State v. Williams*, 9th Dist. Summit No. 27482, 2015-Ohio-2632; *State v. Williams*, 9th Dist. Summit No. 27101, 2014-Ohio-1608; *State v. Williams*, 9th Dist. No. 26353, 2012-Ohio-4140; *State v. Williams*, 9th Dist. Summit No. 25879, 2011-Ohio-6141; *State v. Williams*, 9th Dist. Summit No. 24169, 2009-Ohio-3162.

{¶4} Relevant to this appeal, Mr. Williams sought leave to file a motion for new trial on January 23, 2017. The basis for his motion was that he was actually innocent, his confession

was false, and he had new evidence that Ms. Hughes was the one who shot and killed Mr. Polk. The State responded in opposition to his motion for leave, and Mr. Williams filed a reply brief. The trial court then denied his motion without holding a hearing.

{¶5} Mr. Williams now appeals from the court's judgment and raises two assignments of error for our review. For ease of analysis, this Court consolidates his two assignments of error.

II.

### ASSIGNMENT OF ERROR ONE

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY DENYING DEFENDANT'S MOTION FOR LEAVE TO FILE MOTION FOR NEW TRIAL WHEN THE MOTION, ON ITS FACE, SHOWED UNAVOIDABLE PREVENTION FROM TIMELY DISCOVERING, AND PRESENTING IN A NEW-TRIAL MOTION, EVIDENCE MATERIAL TO HIS "ACTUAL INNOCENCE" WHICH DENIED DEFENDANT HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS.

### ASSIGNMENT OF ERROR TWO

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY DENYING DEFENDANT'S MOTION FOR LEAVE TO FILE MOTION FOR NEW TRIAL WHEN HE ESTABLISHED ENTITLEMENT TO AN EVIDENTIARY HEARING WHICH DENIED DEFENDANT HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS.

{¶6} In his assignments of error, Mr. Williams argues that the trial court abused its discretion when it denied him leave to file a motion for new trial and did so in the absence of a hearing. We disagree.

{¶7} "A trial court's decision to grant or deny a motion for leave to file a delayed motion for a new trial will not be reversed on appeal absent an abuse of discretion." *State v. Davis*, 9th Dist. Lorain No. 12CA010256, 2013-Ohio-846, ¶ 6. "'Likewise, the decision on whether the motion warrants a hearing also lies within the trial court's discretion.'" *State v.*

4

*Holmes*, 9th Dist. Lorain No. 05CA008711, 2006-Ohio-1310, ¶ 8, quoting *State v. Starling*, 10th Dist. Franklin No. 01AP-1344, 2002-Ohio-3683, ¶ 10. An abuse of discretion indicates that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶8} A defendant may seek a new trial "[w]hen new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial." Crim.R. 33(A)(6). Motions for new trial based on newly discovered evidence must be filed within 120 days after the verdict. Crim.R. 33(B). A defendant who wishes to file a motion outside the prescribed time limit "must seek leave from the trial court to file a 'delayed motion'" for new trial. *State v. Cleveland*, 9th Dist. Lorain No. 08CA009406, 2009-Ohio-397, ¶ 49, quoting *State v. Berry*, 10th Dist. Franklin No. 06AP-803, 2007-Ohio-2244, ¶ 19. The motion for leave must demonstrate, "by clear and convincing proof that [the defendant] was unavoidably prevented from the discovery of the evidence upon which he must rely [within the 120-day period]." *State v. Gilcreast*, 9th Dist. Summit No. 26311, 2013-Ohio-249, ¶ 4, quoting Crim.R. 33(B). Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶9} If a defendant fails to establish unavoidable delay, a trial court need not consider the underlying merits of his motion for new trial. *State v. Gilliam*, 9th Dist. Lorain No. 14CA010558, 2014-Ohio-5476, ¶ 11, quoting *State v. Covender* ("*Covender II*"), 9th Dist. Lorain No. 11CA010093, 2012-Ohio-6105, ¶ 13. "'Unavoidable delay results when the [defendant] had no knowledge of the existence of the ground supporting the motion for a new trial and could not have learned of the existence of that ground within the required time in the

exercise of reasonable diligence.'" *Covender II* at ¶ 14, quoting *State v. Rodriguez-Baron*, 7th Dist. Mahoning No. 12-MA-44, 2012-Ohio-5360, ¶ 11. "'Clear and convincing proof requires more than a mere allegation that a defendant has been unavoidably prevented from discovering the evidence he seeks to introduce as support for a new trial.'" *Covender II* at ¶ 14, quoting *State v. Covender* ("*Covender I*"), 9th Dist. Lorain No. 07CA009228, 2008-Ohio-1453, ¶ 6.

{¶10} As noted, Mr. Williams moved for a new trial on the basis of actual innocence. He asserted that he falsely confessed to Mr. Polk's murder to protect Ms. Hughes. According to Mr. Williams, he entered Ms. Hughes' apartment with a gun, but dropped it during a tussle with Mr. Polk. He claimed that Ms. Hughes then retrieved the gun and shot Mr. Polk before willingly fleeing with him and helping him formulate his "confession story."

{¶11} In seeking leave to file his motion for a new trial, Mr. Williams relied upon an affidavit from another inmate at the prison. In his affidavit, the inmate averred that he spoke with Ms. Hughes in February 2009 and, during their brief conversation, she expressed that Mr. Williams was innocent and should not have confessed. The inmate wrote that, when he asked why Mr. Williams would have confessed if he was innocent, Ms. Hughes said: "I don't know * * * I think he was trying to protect me." According to Mr. Williams, he was unavoidably prevented from filing his motion for new trial in a timely manner because he only recently learned of his fellow inmate's conversation with Ms. Hughes.

{¶12} The trial court rejected Mr. Williams' attempt to establish unavoidable delay, noting that he would have been aware of his alleged actual innocence at the time of trial. Further, the court found that the affidavit he presented in support of his motion for leave was lacking in both credibility and reliability, as it was based on hearsay and founded upon a conversation that had allegedly taken place some eight years earlier. Because the court

concluded that Mr. Williams had failed to establish, by clear and convincing evidence, that he was unavoidably prevented from discovering evidence of his actual innocence in a timely manner, it denied his motion for leave.

{¶13} Mr. Williams argues that the trial court abused its discretion when it denied his motion for leave because, while he "clearly knew at the time of his trial of his alleged actual innocence, he could not prove it without new material evidence." He argues that he had no knowledge of his fellow inmate's conversation with Ms. Hughes until recently and could not have learned of it within 120 days of his trial. *See* Crim.R. 33(B).

{¶14} The record reflects that the trial court acted within its sound discretion when it denied Mr. Williams' motion for leave to file a motion for new trial. In his motion for leave, Mr. Williams rested upon a general allegation that he was unavoidably prevented from discovering the information in his fellow inmate's affidavit. *But see Covender II*, 2012-Ohio-6105, at ¶ 14, quoting *Covender I*, 2008-Ohio-1453, at ¶ 6 ("'Clear and convincing proof requires more than a mere allegation that a defendant has been unavoidably prevented from discovering the evidence he seeks to introduce as support for a new trial.'"). He failed to explain his relationship with his affiant, including when the two spoke or how they came to meet. He also failed to explain the circumstances behind the eight year-delay between his affiant's alleged conversation with Ms. Hughes and his recounting of that conversation. Mr. Williams did not, therefore, set forth evidence that he could not have learned of the existence of the information contained in his fellow inmate's affidavit at an earlier date. *See Covender II* at ¶ 14, quoting *Rodriguez-Baron*, 2012-Ohio-5360, at ¶ 11.

{¶15} Notably, even if Mr. Williams only recently learned of the alleged conversation between his affiant and Ms. Hughes, he also failed to explain why he was otherwise unavoidably

prevented from taking earlier measures to raise a claim of actual innocence. Mr. Williams' defense at trial was that, when he shot Mr. Polk, he did not possess the requisite mental state for aggravated murder or murder. If Ms. Hughes actually pulled the trigger and Mr. Williams merely witnessed the shooting, that information was within Mr. Williams' knowledge and he could have asserted a claim of actual innocence on that basis at any time. Yet, the record reflects that he failed to make any timely effort to set forth evidence in support of a claim of actual innocence. *See Covender II* at ¶ 14, quoting *State v. Anderson*, 10th Dist. Franklin No. 12AP-133, 2012-Ohio-4733, ¶ 14 ("'[C]riminal defendants and their trial counsel have a duty to make a 'serious effort' of their own to discover potential favorable evidence.'").

{¶16} Mr. Williams failed to show, by clear and convincing evidence, that he was unavoidably prevented from discovering the evidence in support of his claim of actual innocence in a timely manner. Accordingly, the trial court did not err by denying his motion for leave. "Further, a hearing on the motion was not warranted because the evidence, on its face, did not support [his] claim that he was unavoidably prevented from timely discovery of the evidence." *State v. Davis*, 9th Dist. Lorain No. 12CA010256, 2013-Ohio-846, ¶ 12. Mr. Williams' assignments of error are overruled.

III.

{¶17} Mr. Williams' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

8

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.


APPEARANCES:

CAMERON D. WILLIAMS, pro se, Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.