[Cite as *State v. Phillips*, 2016-Ohio-1198.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 27733 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| RONALD PHILLIPS | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 1993 02 0207 (A) |

DECISION AND JOURNAL ENTRY

Dated: March 23, 2016

MOORE, Judge.

{¶1} Defendant-Appellant, Ronald Phillips, appeals from the judgment of the Summit County Court of Common Pleas, dismissing his successive petition for post-conviction relief. This Court affirms.

I.

{¶2} In 1993, a jury found Mr. Phillips guilty of aggravated murder, an attendant capital specification, felonious sexual penetration, and three counts of rape. The victim in all five counts was S.M.E., a three-year old girl whose mother had a romantic relationship with Mr. Phillips. Approximately two days before she died, S.M.E. was severely beaten and suffered a significant abdominal injury that, if left untreated, would have resulted in her death. The State presented evidence that, on the day she died, Mr. Phillips beat S.M.E. and anally raped her, causing her intestine to rupture and hastening her death. Following the mitigation phase of the trial, the court sentenced Mr. Phillips to the death penalty. On appeal, both this Court and the

Ohio Supreme Court affirmed his convictions and upheld the sentence of death. *See State v. Phillips*, 9th Dist. Summit No. 16487, 1994 WL 479164 (Aug. 31, 1994); *State v. Phillips*, 74 Ohio St.3d 72 (1995).

{¶3} In 1996, Mr. Phillips filed his first petition for post-conviction relief. The trial court denied his petition without holding a hearing, and Mr. Phillips appealed. On appeal, this Court was able to resolve several of his arguments as a matter of law and, therefore, affirmed a portion of the trial court's judgment. *See State v. Phillips*, 9th Dist. Summit No. 18940, 1999 WL 58961, *3-6 (Feb. 3, 1999). We also reversed a portion of the judgment, however, because it did not contain sufficient findings of fact and conclusions of law. *See id.* at *2-3. We remanded the matter to the trial court for it to make the appropriate findings. *Id.* at *6. On remand, the court issued a detailed judgment entry, rejecting all of Mr. Phillips' claims for relief. Mr. Phillips once again appealed, and this Court affirmed the denial of his petition for post-conviction relief. *See State v. Phillips*, 9th Dist. Summit No. 20692, 2002 WL 274637 (Feb. 27, 2002).

{¶4} In 2014, Mr. Phillips filed his second petition for post-conviction relief. The State responded to the petition by filing a motion to dismiss, and Mr. Phillips filed a memorandum in opposition to the same. The court held a hearing strictly limited to the issue of whether the successive petition satisfied the jurisdictional requirements set forth in R.C. 2953.23. Following the hearing, the court granted the State's motion to dismiss.

{¶5} Mr. Phillips now appeals from the trial court's judgment and raises three assignments of error for our review. For ease of analysis, we consolidate two of the assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT DISMISSED [MR.] PHILLIPS'S SECOND-IN-TIME PETITION FOR POST-CONVICTION RELIEF FOR FAILING TO SATISFY REQUIREMENTS OF R.C. [] 2953.23.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY DISMISSING [MR.] PHILLIPS'S SUCCESSOR POST-CONVICTION PETITION WHERE HE PRESENTED SUFFICIENT OPERATIVE FACTS AND SUPPORTING EXHIBITS TO MERIT AT MINIMUM AN EVIDENTIARY HEARING AND DISCOVERY ON HIS CLAIMS.

{¶6} In his first and second assignments of error, Mr. Phillips argues that the trial court erred when it dismissed his second petition for post-conviction relief. Specifically, he argues that his petition satisfied the statutory requirements set forth in R.C. 2953.23. We do not agree that the court erred when it dismissed his petition.

{¶7} "Generally, this Court reviews a trial court's denial of a [post-conviction relief] petition for an abuse of discretion." *State v. Perry*, 9th Dist. Summit No. 26766, 2013-Ohio-4466, ¶ 7. "When a trial court denies a petition solely on the basis of an issue of law, however, this Court's review is de novo." *State v. Childs*, 9th Dist. Summit No. 25448, 2011-Ohio-913, ¶ 9. Because the trial court denied Mr. Phillips' petition on the basis that it does not satisfy the procedural requirements set forth in R.C. 2953.23, a de novo standard of review applies in the instant appeal. *See id.*

{¶8} If a defendant files an untimely or successive petition for post-conviction relief, he or she must demonstrate that the petition "satisfies the requirements of [R.C.] 2953.23(A)(1) * * *." *State v. O'Neal*, 9th Dist. Medina No. 14CA0094-M, 2015-Ohio-4006, ¶ 9. Pursuant to

that statute, both of the following provisions must apply before the court can entertain the petition:

> (a) Either the [defendant] * * * was unavoidably prevented from discovery of the facts upon which [he] must rely to present the claim for relief, or, [after] * * * the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in [his] situation, and the petition asserts a claim based on that right.
>
> (b) The [defendant] shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable fact[-]finder would have found [him] guilty of the offense of which [he] was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable fact[-]finder would have found [him] eligible for the death sentence.

R.C. 2953.23(A)(1)(a)-(b). "A defendant's failure to * * * meet his burden under R.C. 2953.23(A)(1) deprives a trial court of jurisdiction to entertain the petition." *State v. Taylor*, 9th Dist. Lorain No. 14CA010549, 2014-Ohio-5738, ¶ 9. Moreover, "[a] petition for post-conviction relief may be dismissed without a hearing, based upon the doctrine of res judicata, when the petitioner could have raised the issues in his petition at trial or on direct appeal without referring to evidence outside the scope of the record." *State v. Houser*, 9th Dist. Summit No. 21555, 2003-Ohio-6811, ¶ 21.

{¶9} Mr. Phillips' second petition for post-conviction relief contains 16 claims for relief. Seven of those claims relate to the trial testimony of Dr. William Cox, the former Summit County Coroner. Two of the claims relate to potential mitigation evidence that his attorneys did not present and the court did not consider when sentencing him to the death penalty. Five of the claims raise federal and state constitutional challenges to the imposition of the death penalty. One of the claims pertains to cumulative error, and finally, the last claim challenges the constitutionality of Ohio's post-conviction relief statutes. Mr. Phillips' final claim is discussed

below, as he has raised it in his third assignment of error. As to his remaining claims for relief, we address them within the distinct categories to which they relate.

**Claims Related to the Testimony of Dr. Cox**

{¶10} Mr. Phillips challenged Dr. Cox' testimony on two fronts. First, he raised several claims related to the accuracy of the expert medical testimony that Dr. Cox offered, given the evidence available to him when he formed his opinions. Second, he raised several claims related to undisclosed and undiscovered evidence allegedly tending to show that Dr. Cox was biased in favor of the State. We begin by considering the claims related to Dr. Cox' actual testimony at trial.

{¶11} At the time the acts giving rise to this case occurred, the Revised Code defined sexual conduct as vaginal intercourse, anal intercourse, cunnilingus, and fellatio. Former R.C. 2907.01(A). The definition did not include digital penetration or penetration by means of an instrument. *See id.* Accordingly, for the State to secure a rape conviction under former R.C. 2907.01, it had to prove that the offender had vaginal, anal, or oral sex with the victim. *See* former R.C. 2907.02(A) (rape defined) and 2907.01(A) (sexual conduct defined). Evidence of digital penetration or penetration by means of an instrument would not suffice.

{¶12} Mr. Phillips was eligible for the death penalty because the jury determined that he purposely caused S.M.E.'s death during the commission of a rape. *See* former R.C. 2903.01(B). The State theorized that, on the day of S.M.E.'s death, Mr. Phillips beat her and then anally raped her. According to Mr. Phillips, however, he did not rape S.M.E. that day. He confessed to the police that he had done so in the past, but told them that, on that particular day, he only thought about doing so. Mr. Phillips told the police that he became sexually aroused while beating S.M.E., but ultimately decided not to engage in anal intercourse with her. Instead, he

claimed to have used his finger to digitally penetrate her anus. Because digital penetration was not included in the former definition of sexual conduct, *see* former R.C. 2907.01(A), the defense theorized that Mr. Phillips had not raped S.M.E. on the day of her death and, therefore, was not eligible for the death penalty.

{¶13} Dr. Cox, the former Summit County Coroner, conducted S.M.E.'s autopsy and testified for the State at Mr. Phillips' trial. Dr. Cox testified that S.M.E. sustained multiple blunt force traumatic injuries to her abdomen as well as prior and acute blunt force traumatic injuries to her anal cavity. During his examination, Dr. Cox observed that S.M.E. had sustained two sets of injuries. He estimated that one set of injuries occurred about two days before her death and the second set occurred on the morning of her death. In Dr. Cox's view, the earlier beating caused S.M.E.'s intestine to become necrotic and the latter beating caused her already necrotic intestine to rupture. Dr. Cox opined that S.M.E. ultimately died because a portion of her intestine perforated, caused internal bleeding, and resulted in cardiovascular failure due to hypovolemic shock.

{¶14} As to the charges of rape, Dr. Cox testified that he observed older contusions and dilation when he examined S.M.E.'s anus, evidencing that prior anal penetration had occurred. He conducted microscopic examinations of sections taken from her anal cavity and opined that the acute anal injuries that she suffered were inflicted on the morning of her death. According to Dr. Cox, the anal injuries that S.M.E. suffered were not consistent with digital penetration because he did not observe any abrasions to her rectal mucosa. He testified that her injuries would have required "forcible, rapid dilation" by a foreign object with a smooth surface. Dr. Cox opined that "an erected male penis accomplished [S.M.E.'s injuries" and that it was "not reasonable to even remotely suspect" her injuries could have been caused by a finger.

{¶15} Mr. Phillips attached to his second post-conviction relief petition the affidavit and report of Dr. George Nichols, II, a licensed pathologist. In his report, Dr. Nichols indicated that he had reviewed Dr. Cox' autopsy report, trial testimony, and several other pieces of evidence related to the case. Dr. Nichols wrote that, in his opinion, S.M.E.'s intestinal injury occurred two to three days before her death and her intestine ruptured shortly thereafter. He indicated that there was "no conclusive medical evidence to determine that a second [intestinal] injury occurred on the day of her * * * death * * *." Moreover, he wrote that Dr. Cox "may or may not [have been] correct" when he opined that S.M.E.'s anal injuries were caused by a penis. Dr. Nichols agreed that the anal injuries likely occurred on the day of S.M.E's death and were likely caused by something with a "relatively smooth outer surface." He opined, however, that the injuries could have been caused by a penis, finger(s), or a foreign body.

{¶16} Mr. Phillips argues that he received ineffective assistance of trial counsel because his attorneys did not retain an expert to rebut Dr. Cox' testimony or effectively cross-examine him regarding the viability of his medical conclusions. He further argues that his aggravated murder conviction and capital specification are based on insufficient evidence and/or he is actually innocent of them because, as Dr. Nichols reported, the medical evidence does not establish that he raped S.M.E. on the day of her death or caused her death when beat her. Mr. Phillips argues that the trial court erred by not at least affording him a hearing on his petition with regard to the foregoing arguments.

{¶17} As previously noted, the statutory requirements set forth in R.C. 2953.23(A)(1) are jurisdictional in nature. *Taylor*, 2014-Ohio-5738, at ¶ 9. Before the court could afford Mr. Phillips any relief, he had to show that he "was unavoidably prevented from discovery of the facts upon which [he had to] rely to present [his] claim for relief * * *." R.C. 2953.23(A)(1)(a).

Even assuming that res judicata does not bar several of Mr. Phillips' claims, he has failed to explain why he could not have raised them in a timely manner. When his trial concluded, it was clear that his attorneys had conducted a limited cross-examination of Dr. Cox and had not retained a medical expert to refute his testimony. At that time, Mr. Phillips could have secured a report from an expert such as Dr. Nichols and relied upon it in his 1996 post-conviction relief petition. *See State v. Tayse*, 9th Dist. Summit No. 27050, 2013-Ohio-5801, ¶ 8. Instead, he attempted to raise his claims in a second petition, which he filed more than 18 years later. Because Mr. Phillips failed to show that he was unavoidably prevented from raising the foregoing claims in a timely manner, *see* R.C. 2953.23(A)(1)(a), the trial court did not err by dismissing those claims.

{¶18} Mr. Phillips also sought post-conviction relief based on undisclosed and undiscovered evidence that allegedly demonstrated bias on the part of Dr. Cox. The evidence was that Dr. Cox was struggling financially and had to secure the prosecutor's blessing before he, as acting coroner, could establish a private autopsy business. According to Mr. Phillips, the State never disclosed the fact that Dr. Cox was having discussions with the prosecutor's office about his potential, private endeavor. As such, his trial attorneys were never able to attack Dr. Cox' credibility on the basis that he was attempting to curry favor with the prosecutor's office. Mr. Phillips argues that the State wrongfully withheld the foregoing materials in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Further, he argues that his trial attorneys were ineffective for not fully investigating and cross-examining Dr. Cox, as several newspaper articles about his financial difficulties and litigation related thereto were released before he testified.

{¶19} In support of the foregoing claims, Mr. Phillips attached to his successive petition multiple newspaper articles about Dr. Cox. The articles, released between 1993 and 2002,

chronicle Dr. Cox' fall from grace as it was discovered that he abused his county position to conduct private autopsies. Several articles from the spring of 1996, in particular, document the criminal proceedings that the State ultimately brought against Dr. Cox and the discussions that he had with certain county officials regarding his desire to conduct private autopsies. According to Mr. Phillips, he did not learn about the foregoing facts until he pursued habeas relief in federal court. He argues that, because the State failed to disclose the foregoing, exculpatory evidence, he was unavoidably prevented from discovering it at an earlier date.

{¶20} We do not agree that Mr. Phillips was unavoidably prevented from discovering the foregoing facts so as to file his claims in a timely manner. *See* R.C. 2953.23(A)(1)(a). Mr. Phillips filed his first post-conviction relief petition in September 1996, and the court did not rule on his petition until January 1998. A significant number of the newspaper articles that Mr. Phillips introduced either predate or coincide with that time period. Accordingly, even assuming that the State should have disclosed certain facts about Dr. Cox to Mr. Phillips, the record reflects that those facts became publicly available at that time and Mr. Phillips could have amended his petition so as to include the claims related to those facts. His "'mere blanket assertion (that discovery was prevented), without more, [was] insufficient' to demonstrate that [he] was unavoidably prevented from discovery of [those] facts." *State v. Jalowiec*, 9th Dist. Lorain No. 02CA008130, 2003-Ohio-3152, ¶ 8, quoting *State v. Logan*, 9th Dist. Summit No. 21070, 2002-Ohio-6290, ¶ 15. Consequently, the trial court did not err by dismissing the portion of his petition that related to the testimony of Dr. Cox. Mr. Phillips' arguments to the contrary are overruled.

**Claims Related to Potential Mitigation Evidence**

{¶21} Two of the claims Mr. Phillips raised in his successive petition pertained to potential mitigation evidence that was not presented during the mitigation phase of his trial. That evidence was that Mr. Phillips (1) was sexually and physically abused as a child, and (2) suffered from certain neurological deficiencies and psychological issues. Mr. Phillips argued that he received ineffective assistance of counsel because his attorneys failed to thoroughly investigate records from children's services and uncover the fact that he was abused. Additionally, he argued that he did not receive a proper, individualized sentencing determination because the court was not fully aware of the emotional and mental issues he faced.

{¶22} According to Mr. Phillips, the trial court erred by dismissing his claims regarding the foregoing evidence because he was unavoidably prevented from discovering the facts underlying those claims. Mr. Phillips argues that it is well known that victims suppress memories of abuse. Additionally, he argues that "[t]he testing regimens necessary for some of these facts to be discovered and presented did not exist in a sufficiently advanced stage or had not yet even been created at the time of [his] trial or first petition." According to Mr. Phillips, since the time of his trial, there have been advances in psychological testing and research regarding the development of the adolescent brain.

{¶23} Mr. Phillips was not unavoidably prevented from discovering the fact that he was abused as a child. *See* R.C. 2953.23(A)(1)(a). Although he generally offers that victims of abuse frequently suppress memories, he did not present any evidence tending to show that he himself had done so. It is a defendant's burden to demonstrate that a successive petition for post-conviction relief satisfies the elements set forth in R.C. 2953.23(A)(1). *See Taylor*, 2014-Ohio-5738, at ¶ 9. Because Mr. Phillips failed to show that he was unavoidably prevented from

discovering the fact that he was abused as a child, the trial court did not err by dismissing his claims, as they related to that fact.

{¶24} We also cannot conclude that the trial court erred by dismissing Mr. Phillips' claims insofar as they relate to new advances in psychological testing and research about the adolescent brain. Even assuming that the foregoing evidence would satisfy R.C. 2953.23(A)(1)(a), Mr. Phillips failed to demonstrate by clear and convincing evidence that, "but for constitutional error at [his] sentencing hearing, no reasonable fact[-]finder would have found [him] eligible for the death sentence." R.C. 2953.23(A)(1)(b). During the mitigation phase of his trial,

> a defense psychologist presented expert testimony that [Mr. Phillips] function[ed] with a "low average" level of intelligence[ and] that he [was] "a rather simple, emotionally immature, psychologically inadequate person" who [was] ill-equipped to deal with the pressures of a family situation.

*Phillips*, 74 Ohio St.3d at 86. The jury and the trial court were also well aware that Mr. Phillips was only 19 years old when he attacked S.M.E. Accordingly, there was evidence introduced during mitigation about Mr. Phillips' psychological constitution and his young age. On the other hand, the jury and the trial court heard Mr. Phillips' confession that he anally raped three-year old S.M.E. on more than one occasion before she died. They heard evidence that S.M.E. was brutally beaten a few days before her death and that the injuries she suffered at that time would have caused her to be incredibly sick on the morning of her death. They heard evidence that Mr. Phillips "flip[p]ed out" and savagely beat S.M.E. that morning because she was lying in bed and would not come to breakfast when he called her. Finally, they heard evidence that he became sexually aroused while doing so and, after beating her, anally penetrated her.

{¶25} "Clear and convincing evidence requires a degree of proof that produces a firm belief or conviction regarding the allegations sought to be proven." *State v. Gunner*, 9th Dist.

Medina No. 05CA0111-M, 2006-Ohio-5808, ¶ 8. Having reviewed the evidence, we cannot conclude that Mr. Phillips established, by clear and convincing evidence, that, had the defense presented additional mitigation evidence related to his youthfulness and psychological constitution, he would not have been sentenced to death. *See* R.C. 2953.23(A)(1)(b). "[W]hen a defendant kills at the age of eighteen or nineteen, the element of youth * * * is entitled to little weight." *Phillips* at 105. Likewise, "[i]mmaturity[] * * * deserves little if any weight in mitigation." *Id.* Because Mr. Phillips did not satisfy his burden under R.C. 2953.23(A)(1), the trial court did not err by dismissing his claims regarding potential mitigation evidence. *See Taylor*, 2014-Ohio-5738, at ¶ 9. Accordingly, Mr. Phillips' arguments to the contrary are overruled.

**Constitutional Claims Related to the Imposition of the Death Penalty**

{¶26} In five of Mr. Phillips' claims, he raised federal and state constitutional challenges to the imposition of the death penalty. All five claims asserted that his death sentence amounted to cruel and unusual punishment, and the final claim also raised a Double Jeopardy argument. Mr. Phillips argued that it was cruel and unusual punishment to execute him given "the standards of the community as they have evolved in the years since [the] imposition [of his death sentence]." He pointed to both his youthfulness at the time of his offense and evidence that, while legally an adult, his mental issues caused him to function as an adolescent. Additionally, he argued that it amounted to cruel and unusual punishment and a violation of the Double Jeopardy Clause to execute him after such a long period of confinement.

{¶27} It is unclear to this Court how Mr. Phillips' constitutional claims are related to facts that he was unavoidably prevented from discovering in a timely, or at least timelier, manner. *See* R.C. 2953.23(A)(1)(a). Additionally, Mr. Phillips has not demonstrated that his

claims were based on any new federal or state right that retroactively applies to persons in his situation. *See id.* Although Mr. Phillips has cited to several United State Supreme Court cases that have issued since he was sentenced to die, he has not shown that any of those cases specifically created a right that would apply retroactively to him. *See id.* Accordingly, we must conclude that Mr. Phillips' constitutional claims failed to satisfy the provisions of R.C. 2953.23(A)(1) and the trial court did not err by dismissing them. *See Taylor* at ¶ 9. Mr. Phillips' arguments to the contrary are overruled.

**Cumulative Error**

{¶28} Finally, Mr. Phillips presented a claim of cumulative error in his successive petition for post-conviction relief. For the cumulative error doctrine to apply, however, a court "would first have to find that multiple errors were committed * * *." *State v. Craig*, 9th Dist. Summit No. 24580, 2010-Ohio-1169, ¶ 39, quoting *State v. Madrigal*, 87 Ohio St.3d 378, 398 (2000). The trial court, having found no errors here, rejected Mr. Phillips' claim of cumulative error. In reviewing the matter on appeal, we likewise have not identified any errors. Accordingly, we conclude that the trial court did not error by dismissing Mr. Phillips' petition insofar as it raised a claim of cumulative error. Mr. Phillips' first and second assignments of error are overruled.

**ASSIGNMENT OF ERROR III**

> [MR.] PHILLIPS'S CONVICTIONS AND DEATH SENTENCE ARE VOID OR VOIDABLE BECAUSE OHIO'S POST-CONVICTION PROCEDURES DO NOT PROVIDE AN ADEQUATE CORRECTIVE PROCESS AND VIOLATE THE CONSTITUTION.

{¶29} In his third assignment of error, Mr. Phillips challenges the constitutionality of R.C. 2953.23. He argues that the statute violates various constitutional provisions because it requires petitioners to satisfy an extremely high burden of proof without the benefit of discovery

or a hearing. According to Mr. Phillips, "the Court should not require a capital petitioner to make any showing prior to the Court reviewing the claims contained in his petition."

{¶30} "State collateral review * * * is not a constitutional right," so "a petitioner receives no more rights than those granted by the statute." *State v. Calhoun*, 86 Ohio St.3d 279, 281 (1999). This Court has previously rejected claims that R.C. 2953.23 is unconstitutional. *See, e.g., State v. Cleveland*, 9th Dist. Lorain No. 08CA009406, 2009-Ohio-397, ¶ 30. Mr. Phillips makes no attempt to explain why this Court should abandon its precedent. *See* App.R. 16(A)(7). Because we have already found R.C. 2953.23 constitutional and Mr. Phillips has not addressed our precedent, we reject his arguments concerning the constitutionality of R.C. 2953.23. Accordingly, Mr. Phillips' third assignment of error is overruled.

## III.

{¶31} Mr. Phillips' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT

WHITMORE, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

TIMOTHY F. SWEENEY, Attorney at Law, for Appellant.

LISA M. LAGOS, Assistant State Public Defender, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.