[Cite as *State v. Muzic*, 2017-Ohio-8563.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 28646 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JOHN M. MUZIC | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 13 02 0360 |

DECISION AND JOURNAL ENTRY

Dated: November 15, 2017

HENSAL, Presiding Judge.

{¶1} Defendant-Appellant, John Muzic, appeals from the judgment of the Summit County Court of Common Pleas, denying his petition for post-conviction relief. This Court affirms.

I.

{¶2} This Court previously outlined the facts of this case on direct appeal. *See State v. Muzic*, 9th Dist. Summit No. 27117, 2015-Ohio-1521. While babysitting for her aunt and uncle, C.V. met Mr. Muzic and ultimately went home with him to meet his dogs. Mr. Muzic provided C.V., who was sixteen at the time, with alcohol and encouraged her to drink. As their conversation turned to sex, C.V. became uncomfortable and expressed her desire to leave. Mr. Muzic, however, insisted she finish her drink and soon began placing his fingers down her pants and underwear. When C.V. attempted to leave, he forcibly dragged her to his bedroom. He then kissed her, digitally penetrated her, and made her perform oral sex, all while exerting pressure on

her throat.  The assault ended after Mr. Muzic had vaginal intercourse with her and became remorseful.  Subsequently, C.V. returned to her aunt and uncle's house where she called her brother and reported the incident to the police.  Though his version of the events changed several times, Mr. Muzic ultimately claimed that he and C.V. engaged in consensual sexual activity.

{¶3}   As a result of the foregoing incident, a jury found Mr. Muzic guilty of kidnapping, rape, and gross sexual imposition.  The court sentenced him to a total of 15 years in prison and classified him as a tier III sexual offender.  On direct appeal, this Court affirmed Mr. Muzic's convictions.  *See id.*

{¶4}   While Mr. Muzic's direct appeal was pending, he filed a petition for post-conviction relief.  His petition was based on the fact that, post-trial, his attorneys had discovered a variety of social media posts that C.V. had authored.  Mr. Muzic argued that, had his attorneys known about the posts before trial, they could have used them to attack C.V.'s credibility.  The State opposed Mr. Muzic's petition, and the trial court held a hearing.  Following the hearing, the court also accepted additional briefs from both sides.  The court ultimately denied Mr. Muzic's petition on its merits.

{¶5}   Mr. Muzic now appeals from the court's denial of his petition and raises a single assignment of error for our review.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED WHEN IT DENIED MR. MUZIC'S PETITION
FOR POST-CONVICTION RELIEF, FINDING THAT MR. MUZIC'S TRIAL
COUNSEL REPRESENTATION DID NOT REACH THE LEVEL OF
INEFFECTIVE ASSISTANCE OF COUNSEL, AND THAT MR. MUZIC WAS
NOT PREJUDICED OR DENIED EFFECTIVE ASSISTANCE OF COUNSEL
TO AN EXTENT THAT WOULD HAVE ALTERED THE OUTCOME OF THE
CASE.

{¶6}     In his sole assignment of error, Mr. Muzic argues that the trial court abused its discretion when it denied his petition for post-conviction relief.  Specifically, he challenges the court's conclusion that he failed to establish ineffective assistance of counsel.  This Court rejects his argument.

{¶7}     "An appellate court reviews the denial of a petition for [post-conviction relief] for an abuse of discretion."  *State v. Cleveland*, 9th Dist. Lorain No. 08CA009406, 2009-Ohio-397, ¶ 11.  *But see State v. Childs*, 9th Dist. Summit No. 25448, 2011-Ohio-913, ¶ 9 (de novo standard applies when denial is based strictly on issue of law).  An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).  When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court.  *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶8}     Revised Code Section 2953.21(A)(1)(a) "permits a person who has been convicted of a criminal offense to petition the court for post-conviction relief where 'there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * *.'"  *State v. Ross*, 9th Dist. Summit No. 27180, 2014-Ohio-2038, ¶ 7, quoting R.C. 2953.21(A)(1)(a).  When a petitioner's post-conviction claim sounds in ineffective assistance of counsel, a trial court must analyze his or her claim under the two-step test set forth in *Strickland v. Washington*, 466 U.S. 688 (1984).  *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 61.  The petitioner must show that (1) his counsel's performance was deficient, and (2) but for counsel's deficient performance, there is a reasonable probability that the result of the trial would have been different.  *Strickland* at 687.  If the prejudice prong of the test is dispositive, an appellate court

may limit its review to that prong. *State v. Kordeleski*, 9th Dist. Lorain No. 02CA008046, 2003-Ohio-641, ¶ 37.

{¶9} Mr. Muzic moved for post-conviction relief on the basis of ineffective assistance of counsel. In his petition, he argued that his trial attorneys were ineffective because they failed to fully investigate C.V., the complaining witness. One of his trial attorneys completed an affidavit on his behalf, and he attached the affidavit to Mr. Muzic's petition. In the affidavit, the attorney averred that, before trial, he hired a private investigative firm "to secure background information of the complainant including social media sites * * *." He averred that the firm failed to uncover any social media information, so he and his co-counsel went to trial "without any meaningful background information" on C.V. Post-trial, however, Mr. Muzic's family notified the attorney that C.V. had been active on certain social media sites. The attorney incorporated by reference and attached to his affidavit a compilation of posts taken from two social media sites. The compilation highlighted a number of specific posts that C.V. had authored, broken down by category. The categories included: "Smoking/Marijuana/Drugs," "Alcohol/Drunkenness," "Sex," and "Anger/Aggression/Violence." Mr. Muzic argued that, had his attorneys discovered C.V.'s posts in advance of trial, they could have used the posts to impeach her, attack her credibility, and bolster his defense of consent.

{¶10} The trial court held a hearing on Mr. Muzic's petition, and both of his trial attorneys testified on his behalf. The first attorney, who completed the aforementioned affidavit, testified that the firm he hired to investigate C.V. failed to uncover any useful social media information about her. The firm only notified the first attorney that C.V. had a Facebook page, but they "could not access [it]." The first attorney stated that he did not find the firm's response unusual because he had little knowledge of social media or its prevalence. He deemed himself

"technologically defunct" and confirmed that, once he received the report from his private investigator, he did not make any additional attempts to gain information about C.V. online. He testified that he and Mr. Muzic's second attorney decided that the latter should cross-examine C.V. because the second attorney had a softer approach, C.V. was only a teenager, and they had "literally nothing" on her.

{¶11} The first attorney testified that Mr. Muzic's family contacted him after trial and began describing the posts C.V. had authored on certain social media sites. He then had his law clerk look for that information online and "was floored" by the posts he saw. He testified that, had he known about the posts, he would have cross-examined C.V. himself and subjected her to his more aggressive style. He noted that, during trial, the State portrayed C.V. as an innocent girl who seldom drank, abstained from drugs, and was sexually naïve. He testified that, had he known about her posts, he could have used them to shatter that illusion and undermine her credibility. He specified that certain posts showed C.V. drank and used marijuana frequently, so they could have refuted her testimony that (1) she generally practiced sobriety, and (2) Mr. Muzic forced her to drink alcohol. He stated that other sexually explicit posts could have caused the jury to question C.V.'s claim that Mr. Muzic forced her to engage in sexual activity. The first attorney grudgingly acknowledged that the trial court may not have allowed him to introduce a number of the posts, but nonetheless insisted that his being aware of them would have led to a different outcome at trial.

{¶12} Mr. Muzic's second attorney confirmed that he and the first attorney decided he would cross-examine C.V. because he had a softer style and they did not want to risk offending the jury when testing her credibility. He too testified that he had poor computer skills, had little knowledge of social media, and did not become aware of C.V.'s social media posts in advance of

trial. He testified that, had he known about the posts, he would have prepared differently and structured his examination accordingly. The second attorney acknowledged that C.V.'s sexually explicit posts would have been barred by the rape shield statute, but testified that he would have relied on her other posts to attack her credibility. Specifically, he would have used her posts about drinking and marijuana to refute her testimony that she seldom drank and abstained from drugs.

{¶13} The trial court ultimately rejected Mr. Muzic's petition for post-conviction relief. The court found that, even if Mr. Muzic's attorneys had violated their substantial duties by not fully investigating C.V., he had failed to establish resulting prejudice. The court found that C.V.'s posts were of questionable admissibility and that Mr. Muzic's own attorneys did not even agree on which ones would have been admissible. The court noted that none of the posts implied that C.V. had fabricated her testimony or were "clearly probative of untruthfulness." Further, the court noted that the jury had heard testimony that Mr. Muzic had repeatedly lied to the police about the nature of his encounter with C.V. while her version of the events had remained consistent. Based on its review of the record, the briefs, the testimony, and the evidence, the court concluded that the timely discovery of the posts would not have changed the result in this matter.

{¶14} Upon review, the record supports the trial court's conclusion that Mr. Muzic failed to establish prejudice as a result of his attorneys' failure to discover C.V.'s social media posts in a timely manner. *See Kordeleski*, 2003-Ohio-641, at ¶ 37 (prejudice prong of *Strickland* can be dispositive). At trial, C.V. testified that Mr. Muzic forcibly dragged her to his bedroom, digitally penetrated her, made her perform oral sex, and had vaginal intercourse with her against her will. At the time, C.V. was sixteen years old and had just met Mr. Muzic through her aunt

and uncle. There was evidence that she immediately reported the rape to the police and underwent an examination, as a result of which investigators discovered Mr. Muzic's DNA on her neck, breast, and underwear. Mr. Muzic, meanwhile, initially denied touching C.V. or having her in his bedroom. He then admitted that they had kissed, but denied otherwise being intimate. Finally, he admitted that he had touched C.V.'s vagina with her consent, but denied that they had engaged in oral sex or intercourse. The jury was presented with "several iterations" of his version of the events while "C.V. was consistent in what she told her brother, law enforcement, a nurse practitioner, and the jury about what happened at Mr. Muzic's house." *Muzic*, 2015-Ohio-1521, at ¶ 16-17.

{¶15} None of the social media posts that Mr. Muzic's attorneys discovered dealt with this specific incident. Rather, they consisted of either angry outbursts or commentary on alcohol use, drug use, or sex. Many of the posts were of questionable admissibility, particularly if offered to suggest that C.V. was promiscuous. *See State v. Powell*, 9th Dist. Lorain No. 12CA010284, 2017-Ohio-4030, ¶ 17-18 (discussing rape shield statute). Others were simply evidence that C.V. may have been untruthful about how often she drank alcohol or whether she used marijuana. None of the posts tended to show that C.V. lied about having been sexually assaulted. Accordingly, the trial court reasonably could have concluded that Mr. Muzic failed to demonstrate prejudice as a result of his attorneys' performance. Mr. Muzic did not show that, had his attorneys been aware of C.V.'s social media posts, the jury would have chosen to believe his version of the events over hers. *See Strickland*, 466 U.S. at 687. As such, this Court must conclude that the trial court acted within its sound discretion when it denied his petition for post-conviction relief. *See Cleveland*, 2009-Ohio-397, at ¶ 11. Mr. Muzic's sole assignment of error is overruled.

III.

**{¶16}** Mr. Muzic's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

SCHAFER, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

SENECA KONTURAS, Attorney at Law, for Appellant.

PATRICIA J. SMITH, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.