[Cite as *State v. Young*, 2018-Ohio-2797.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

    v.

ROY R. YOUNG, JR.

    Appellant

C.A. No.    16CA011045

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    12CR086257

DECISION AND JOURNAL ENTRY

Dated: July 16, 2018

CALLAHAN, Judge.

{¶1} Appellant, Roy Young, Jr., appeals from the judgment of the Lorain County Court of Common Pleas, that denied his petition for post-conviction relief. This Court affirms.

I.

{¶2} The facts and initial procedural history of this case were set out in Mr. Young's direct appeal. *See State v. Young*, 9th Dist. Lorain No. 15CA010803, 2017-Ohio-1400. Based on evidence that Mr. Young had been sexually abusing his then 15-year old stepdaughter since she was five years old, the grand jury indicted him on three counts of rape, three counts of sexual battery, and three counts of gross sexual imposition. *Id.* at ¶ 2-3. After a trial, the jury found Mr. Young guilty on all nine counts. *Id.* at ¶ 4. The trial court classified him as a Tier III sexual offender/child victim offender and sentenced him to life in prison with the possibility of parole after 13 years. *Id.*

**{¶3}** Mr. Young appealed from his convictions on the bases of insufficiency of the indictment, error in the jury instructions, the trial court's ex parte communication with the State, weight of the evidence, and ineffective assistance of counsel. *Id*. at ¶ 6, 17, 52, 57, 62. Regarding his ineffective assistance of counsel claim, he specifically argued that counsel was ineffective for introducing bad acts evidence and for failing to question a juror about her familiarity with the assistant prosecutor. *Id.* at ¶ 62. This Court overruled Mr. Young's assignments of error and affirmed his convictions. *Id.* at ¶ 69.

**{¶4}** While Mr. Young's direct appeal was pending, he filed a petition to vacate or set aside the judgment and sentence, in which he argued that his trial counsel was ineffective for failing to hire an expert to rebut certain aspects of the State's evidence and for failing to fully investigate the State's case to prepare for trial. Specifically, Mr. Young argued that trial counsel was ineffective for failing to investigate, for failing to effectively cross-examine the State's rebuttal witness to determine whether she had pending criminal charges and potential bias, and for failing to hire an expert to educate the jury regarding DNA evidence associated with condoms found in the defendant's septic system and a condom wrapper found under the victim's bed. Mr. Young appended several exhibits to his petition, including a sworn statement by a professor of biological sciences, transcripts of the change of plea and sentencing hearings regarding the State's rebuttal witness, and affidavits of persons averring that they heard the victim recant her allegations against Mr. Young. The State opposed Mr. Young's petition, and the trial court held an evidentiary hearing. At the conclusion of the hearing, the trial court denied Mr. Young's petition on the merits. Mr. Young filed a timely appeal in which he raises one assignment of error for review.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED WHEN IT DENIED MR. YOUNG'S PETITION
TO VACATE OR SET ASIDE JUDGMENT AND SENTENCE[.]

**{¶5}** Mr. Young argues that the trial court erred by denying his petition for post-conviction relief. This Court disagrees.

**{¶6}** The decision to grant or deny a petition for post-conviction relief is committed to the discretion of the trial court. *State v. Glynn*, 9th Dist. Medina No. 02CA0090-M, 2003-Ohio-1799, ¶ 4. Accordingly, this Court will not overturn the decision of a trial court regarding a petition for post-conviction relief absent an abuse of discretion. *Id.* An abuse of discretion is more than an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). It arises where the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Id.* When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

**{¶7}** In reviewing a challenge such as this, this Court has recognized:

Revised Code Section 2953.21(A)(1)(a) permits a person who has been convicted of a criminal offense to petition the court for post-conviction relief where there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * *. *State v. Ross*, 9th Dist. Summit No. 27180, 2014-Ohio-2038, ¶ 7, quoting R.C. 2953.21(A)(1)(a). When a petitioner's post-conviction claim sounds in ineffective assistance of counsel, a trial court must analyze his or her claim under the two-step test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 61. The petitioner must show that (1) his counsel's performance was deficient, and (2) but for counsel's deficient performance, there is a reasonable probability that the result of the trial would have been different. *Strickland*, 466 U.S. at 687. If the prejudice prong of the test is dispositive, an appellate court may limit its review to that prong. *State v. Kordeleski*, 9th Dist. Lorain No. 02CA008046, 2003-Ohio-641, ¶ 37.

(Internal quotations omitted.) *State v. Muzic*, 9th Dist. Summit No. 28646, 2017-Ohio-8563, ¶ 8.

**{¶8}** In fact, the Supreme Court of Ohio has recognized that a court need not analyze both prongs of the *Strickland* test, where the issue may be disposed of upon consideration of one of the factors. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989). Specifically,

> "[a]lthough we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing in one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result."

*Id*., quoting *Strickland*, 466 U.S. at 697.

**{¶9}** It is well settled that there is a "'strong presumption [ ] that licensed attorneys are competent and that the challenged action is the product of a sound strategy.'" *State v. Gates*, 9th Dist. Summit No. 25435, 2011-Ohio-5631, ¶ 31, quoting *State v. Watson*, 9th Dist. Summit No. 18215, 1997 Ohio App. LEXIS 3477, *4 (July 30, 1997). Moreover, "'debatable trial tactics do not give rise to a claim for ineffective assistance of counsel.'" *Gates* at ¶ 31, quoting *State v. Hoehn*, 9th Dist. Medina No. 03CA0076-M, 2004-Ohio-1419, ¶ 45. In fact, trial counsel's strategic decisions are granted deference by a reviewing court. *See State v. Clayton*, 62 Ohio St.2d 45, 49 (1980).

**{¶10}** Mr. Young argues three bases for his allegation that trial counsel was ineffective. Specifically, he argues that counsel was ineffective for failing to investigate: (1) DNA evidence of condoms found in the family's septic system, (2) DNA evidence of a condom wrapper found under the victim's bed, and (3) criminal charges pending against the State's rebuttal witness and any concomitant potential bias by that witness. His first two arguments fail, because trial

counsel's performance was not deficient. His third argument fails, because he has failed to demonstrate prejudice.

Condoms in the septic system

{¶11} The victim had alleged that Mr. Young always used condoms when he had sexual intercourse with her, and that he flushed the used condoms down the toilet. Detective James Rico of the Lorain County Sheriff's Office testified at the post-conviction relief hearing. He reiterated some of his trial testimony regarding his discovery of multiple condoms in the family's septic system. The detective understood that there would be DNA evidence from multiple persons throughout the septic tank and on all items in the tank. After consulting with his supervisor and someone at the Bureau of Criminal Identification and Investigation ("BCI"), he did not remove any of the condoms from the septic tank or otherwise try to collect them or their contents as evidence. Accordingly, the State did not present any DNA evidence relative to the condoms at trial. Detective Rico remembered that defense counsel had cross-examined him about how DNA can be left on items, and that he had agreed with defense counsel's assertion at trial that a piece of evidence containing Mr. Young's DNA would have been very helpful to the prosecution. The detective also agreed that the State had no DNA evidence linking Mr. Young to any crime.

{¶12} Trial counsel testified at the post-conviction relief hearing. He admitted that he did not hire an expert to testify that particular DNA evidence could have been obtained from the condoms under the circumstances in which they were found. He testified, however, that he purposefully did not attempt to obtain any DNA evidence from the condoms, because he believed that the condoms would certainly test positive for Mr. Young's DNA. He based his

belief on information from both Mr. Young and his wife that they routinely used condoms when they engaged in anal sex.

{¶13} The defense theory of the case was that the rapes never occurred and that the victim was lying. By declining to present expert testimony that the condoms could have yielded DNA evidence, trial counsel was able to argue that the State had failed to present any physical evidence linking Mr. Young to any sexual offense against the victim. On the other hand, had trial counsel secured an expert to educate the jury about the potential significance of the DNA evidence associated with the condoms, particularly in light of his belief that Mr. Young's DNA would be present, he might have bolstered the inference that the condoms were used by Mr. Young. Under the circumstances, trial counsel employed reasonable trial tactics when he declined to use an expert to focus on the potential value of the DNA evidence to the State's case, and instead emphasized the lack of physical evidence linking his client to any crime. Accordingly, trial counsel was not deficient for failing to investigate DNA evidence from the condoms found in the septic system.

Condom wrapper allegedly found under the victim's bed

{¶14} Someone in the home presented Detective Rico with a condom wrapper that had allegedly been found under the victim's bed. The detective collected the wrapper as evidence, and it was tested for DNA by BCI. The results of the DNA test indicated the presence of DNA from at least two persons, at least one of which was male. The results, however, were otherwise inconclusive, including as to whether Mr. Young was a source of any DNA on the wrapper.

{¶15} Mr. Young argues that trial counsel was ineffective for failing to investigate and ensure that the victim's boyfriend's DNA was obtained and compared to the DNA profiles obtained from the wrapper. Although trial counsel was aware that the victim had a boyfriend at

the time, he chose instead to argue that, again, the State had no physical evidence linking Mr. Young to any crime. Trial counsel emphasized that the inconclusive DNA results indicated an absence of Mr. Young's DNA, precisely because the State had a sample of his DNA and yet could not link Mr. Young to the wrapper. Trial counsel testified that he was able to argue to the jury that the inability to connect the defendant to the condom wrapper gave rise to reasonable doubt as to Mr. Young's involvement in criminal activity.

{¶16} Moreover, trial counsel testified at the post-conviction relief hearing that he found the circumstances of how the wrapper came to the attention of the detective to be suspect. Trial counsel expressed a strong belief that Mr. Young's wife, who initially supported the victim in her allegations against her stepfather, had fabricated evidence and planted the condom wrapper in her daughter's room, or merely told the detective that it had been found there. Therefore, trial counsel believed that there was a strong probability that the victim's boyfriend's DNA would not be on the wrapper, giving rise to a stronger inference that Mr. Young had used the condom inside while raping the victim. By the time of the trial, Mr. Young's wife had changed her allegiance and supported her husband. Trial counsel chose not to raise these issues and risk impugning the credibility of one of his witnesses. Moreover, even if trial counsel's suspicions were incorrect, his decision not to request the boyfriend's DNA, and thereby risk his exclusion as a contributor, but instead to argue lack of evidence and reasonable doubt were sound trial tactics. Accordingly, trial counsel was not ineffective for failing to investigate the condom wrapper further and secure the victim's boyfriend's DNA for testing.

The State's rebuttal witness

{¶17} In his case-in-chief, Mr. Young presented the testimony of several witnesses who claimed to have heard the victim recant her allegations against her stepfather under the following

circumstances. The victim had called her boyfriend who was at a party at the time. Because the boyfriend was rolling a marijuana cigarette, he used the speaker function to take the victim's call. Several defense witnesses claimed to have overheard that conversation during the party. They testified that the victim admitted that she had fabricated her allegations against Mr. Young for the benefit of her boyfriend.

{¶18} The State subsequently presented the testimony of a rebuttal witness who owned the apartment where the alleged party took place. The State was only able to identify and locate the rebuttal witness the day before she testified. The witness testified that there was no such party at her apartment, and that she did not even know most of the defense witnesses who claimed to have been at her home.

{¶19} Mr. Young argues that trial counsel was ineffective for failing to use the mere minutes after he was notified of the rebuttal witness to investigate, during which time he would have determined that she had pending criminal charges, which he could have used to impeach her. Mr. Young also argues that trial counsel should have discovered that, because the State had offered the rebuttal witness a plea bargain in exchange for her testimony, she could be impeached for bias.

{¶20} Evid.R. 609(A) provides that a party may impeach, or attack the credibility of, a witness with evidence that the witness has been convicted of a crime under certain circumstances. There is no provision for impeachment with evidence that the witness has merely been charged with a crime. Even if trial counsel might have investigated the rebuttal witness' criminal history, he would not have been able to impeach her with evidence of her three pending trafficking charges. Accordingly, Mr. Young has not demonstrated that he was prejudiced by trial counsel's failure to discover the rebuttal witness' pending charges.

{¶21} Evid.R. 616(A) provides that a party may impeach a witness with evidence of her "[b]ias, prejudice, interest, or any motive to misrepresent * * * either by examination of the witness or by extrinsic evidence." Mr. Young argues that the State's rebuttal witness was a biased witness, who had a motive to lie, because the State had offered her a plea deal in her criminal case in exchange for her testimony against Mr. Young.

{¶22} The assistant prosecutor who prosecuted the case against Mr. Young testified at the post-conviction relief hearing. She had no involvement with the rebuttal witness' criminal case, and knew nothing about any pending charges against the witness when she testified at Mr. Young's trial. In fact, the assistant prosecutor did not learn that the rebuttal witness had any pending charges until weeks after Mr. Young's trial had concluded.

{¶23} The assistant prosecutor who prosecuted the criminal case against the rebuttal witness also testified at the post-conviction relief hearing. In addition, both transcripts of the rebuttal witness' change of plea and sentencing hearings are part of the record. There was no discussion on the record at the plea hearing about any plea bargain in the case. After the rebuttal witness entered her guilty plea, the matter was referred for a presentence investigation report. The assistant prosecutor testified that trial counsel for the rebuttal witness contacted him prior to her sentencing hearing to ask if the State would agree to probation because (1) the rebuttal witness was cooperating in an ongoing investigation against another drug dealer, and (2) the rebuttal witness had testified a month earlier for the State in Mr. Young's trial. The assistant prosecutor, who had been unaware of the witness' prior testimony, confirmed with the assistant prosecutor in Mr. Young's case that the rebuttal witness had in fact testified for the State. After learning that she had so testified a month earlier, the assistant prosecutor agreed to recommend probation.

{¶24}  Based on the timing of these events, it is clear that there was no plea or sentencing agreement in existence at the time the rebuttal witness testified in Mr. Young's case.  Mr. Young's trial counsel could not have discovered such an agreement, and therefore a motive for the rebuttal witness to lie, when none yet existed.  Accordingly, Mr. Young has not demonstrated that he suffered any prejudice as a result of trial counsel's failure to investigate to determine if the State's rebuttal witness could be impeached pursuant to Evid.R. 616(A).

Conclusion

{¶25}  Mr. Young has failed to demonstrate either that trial counsel's performance was deficient, or that he suffered any prejudice, as a result of counsel's failure to investigate the issues raised by Mr. Young in his petition for post-conviction relief.  Therefore, he has failed to demonstrate that trial counsel was ineffective and that he was entitled to have his conviction vacated.  As such, the trial court did not abuse its discretion when it denied Mr. Young's petition for post-conviction relief.  Mr. Young's assignment of error is overruled.

III.

{¶26}  Mr. Young's sole assignment of error is overruled.  The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

LYNNE S. CALLAHAN
FOR THE COURT

SCHAFER, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

JACK W. BRADLEY and KRISTEN M. NEIDING, Attorneys at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellee.